Nancy LYLE, Plaintiff,

v.

CHARLIE BROWN FLYING CLUB, INC., Defendant.

Civ. A. No. C85–0159A.

United States District Court, N.D. Georgia, Atlanta Division.

Oct. 1, 1986.

**394**

Eugene R. Kiser, William A. Morrison, Atlanta, Ga., for plaintiff.

Thomas J. Strueber, Lord, Bissell & Brook, Atlanta, Ga., for defendant.

## ORDER

FORRESTER, District Judge.

This action is before the court on defendant's renewed motion for sanctions against plaintiff's counsel pursuant to Rule 11 of the *Federal Rules of Civil Procedure.* The court, by order entered February 21, 1986, set an evidentiary hearing on this motion, which was begun on April 30, 1986 and continued on May 6, 1986. Notice was given to counsel that the hearing would be confined to three issues: the extent of pre-complaint investigation conducted by Messrs. Kiser, Worozbyt, and Morrison on the issue of Randy Krom's permission to fly the airplane at issue in this lawsuit; the extent of factual inquiry done prior to filing of plaintiff's motion for reconsideration on January 8, 1986 by Messrs. Kiser and Morrison, as it relates to the spurious "quote" appearing at page three of the brief; and the extent of pre-filing legal investigation conducted by Messrs. Kiser, Morrison, and Worozbyt as it relates to the January 17, 1986 amended motion for reconsideration. The three attorneys who were the subject of the motion for sanctions had adequate notice of the issues to be resolved at the evidentiary hearing, and

were given adequate time to prepare for the hearing. A full evidentiary presentation was made by all three counsel at that time. The following constitutes the court's findings of fact and conclusions of law. For the reasons which appear herein, defendant's motion for sanctions is GRANTED.

## A. FINDINGS OF FACT.

Messrs. Worozbyt and Morrison were initially associated in this case by the Lyle and Krom families at the suggestion of Ms. Gwen Landano. The court credits Ms. Landano's version of this association over Mr. Worozbyt's, and finds that Ms. Landano recommended that the families see Mr. Worozbyt because she had seen him on television, rather than because of the long-standing acquaintance between Ms. Landano and Mr. Worozbyt testified to by the latter. At this initial client consultation both Mr. Worozbyt and Mr. Morrison were present, and Ms. Landano informed the attorneys at that time that it was the position of the Charlie Brown Flying Club that the airplane which crashed, killing Randy Krom and Judson Lyle, had been stolen from the club. Further, the court credits Ms. Landano's testimony that although she told the lawyers about the flying club's position that the plane had been stolen, the lawyers "did not pay any attention." The court specifically credits this testimony over the responses Mr. Worozbyt elicited from Ms. Landano via leading questions concerning the degree of attention which the attorneys paid to her.

After talking to Ms. Landano and to the families, Mr. Worozbyt and Mr. Morrison made the decision to associate Mr. Kiser as lead counsel in the case. The three lawyers, following a lead given them by Ms. Landano, located a gas station attendant who stated that on the night the plane was taken Krom and Lyle were not drunk. Additionally, the lawyers discovered that Krom had been a member of the Charlie Brown Flying Club and that he had recently written a check to the flying club for $40. After talking with the families and

with Ms. Landano, Morrison, Worozbyt, and Kiser formed the belief that Krom and Lyle were not of such a character as to have stolen the airplane.

It is evident that Mr. Worozbyt and Mr. Morrison recognized the significance of the permission issue, since Mr. Morrison wrote a letter to the flying club inquiring as to its position on whether Mr. Krom had permission to take the plane. The attorneys received a response from the flying club's insurers, which referred further inquiry to the insurers' attorneys, the law firm of Lord, Bissell & Brook. Mr. Strueber, of Lord, Bissell, sent a letter to Mr. Kiser on July 26, 1984 in which he inquired as to whether Mr. Kiser or Mr. Worozbyt's firm would be lead counsel in the case. The letter additionally stated that all future communications over the incident were to be directed to Mr. Strueber. The court finds that this letter does not constitute a response to Mr. Morrison's inquiry concerning the club's position on the permission issue. From Mr. Morrison and Mr. Worozbyt's perspective, then, they had inquired as to whether Mr. Krom had permission and never received a response.

With respect to Mr. Kiser, however, the court credits the testimony of Mr. Strueber that in early September of 1984, four months prior to the filing of the complaint in this case, he specifically told Mr. Kiser that the club's position was that Mr. Krom did not have permission to fly the airplane on the night it crashed, since no one had requested permission to take the airplane, Krom was not a member of the section of the club which was authorized to fly that particular plane, and because Krom did not have adequate training to fly that airplane. The court credits Mr. Strueber's testimony over Mr. Kiser's on this point for several reasons, including the fact that Mr. Strueber had made a contemporaneous note of the conversation in his file, and the fact that Mr. Kiser was unable to state with any specificity whether the conversation had taken place. At one point Mr. Kiser stated that Mr. Strueber had never told him that there was no permission, but at another point Mr. Kiser stated he did not

recall any such conversation, and yet another time he stated that he had no independent recollection. Given Mr. Kiser's uncertainty on this point, and Mr. Strueber's firm testimony supported by his office notes, the court finds that Mr. Kiser was aware in September of 1984 of the precise factual basis for the club's contention that Mr. Krom had no permission. However, the court further credits Mr. Morrison's testimony that Mr. Kiser never passed this information on to himself or, to his knowledge, to Mr. Worozbyt.

Thus, the court finds that prior to filing the complaint Mr. Morrison and Mr. Worozbyt interviewed the survivors of the two men, obtained a cancelled check which indicated that Mr. Krom was a member of the flying club, knew that the club claimed the plane had been stolen, and knew that a gas station attendant had stated that the men were not drunk on the night the plane was taken. They had received no response from the club or the club's attorneys regarding the permission issue, and because the club was represented, they did not feel that they could ethically make direct inquiry of the club's employees or members. The court notes the statement in Mr. Worozbyt's brief, adopted by Mr. Morrison, that employees of the club had been told not to talk to the plaintiffs. Absolutely no evidence in the record of this case supports that factual statement.

The court finds that prior to the filing of the complaint in this case Mr. Kiser knew all that Mr. Morrison and Mr. Worozbyt knew, but additionally was aware that the club's contention that the plane had been taken without permission was supported by three specific factual allegations: that no one had requested permission to take the plane, that Mr. Krom was not a member of the section of the club which was authorized to fly the plane, and that Mr. Krom had not been trained on that airplane. The court finds Mr. Kiser took no additional steps to procure evidence which would tend to disprove those three factual statements.

With regard to the second pleading at issue before the court, the motion for re-

consideration, the court finds that absolutely no pre-filing inquiry was done by either Mr. Kiser or Mr. Morrison to confirm that the factual statement contained on page three of the brief in support of the motion for reconsideration was true. As noted in this court's order of February 21, 1986, that brief was an effort to persuade the court that it had erred in concluding that there were no disputed issues of fact in this case, and contended that there was a conflict between Mr. Shaw's affidavit and his deposition testimony. In a passage which is indented, circumscribed with quotation marks, and which contains specific citations to lines and pages of the Shaw deposition, the brief manufactures "testimony." If the putative quotes contained in the brief in fact appeared in the Shaw deposition, the court might very well have granted the plaintiff's motion for reconsideration. However, the statements directly attributed to Mr. Shaw as quotes do not appear in his deposition, and in fact the entire tenor of Mr. Shaw's testimony is taken out of context and misrepresented in the brief. The court further finds as fact that the reasonable inquiry necessary to support the factual statement contained in this pleading would simply have been to check the deposition. This was not done by either Mr. Kiser or Mr. Morrison.

The final pleading at issue before the court is plaintiff's amended motion for reconsideration. This motion and brief cite only one case, which is a case concerning the standard for summary judgment. No case law is cited which supports the legal conclusions stated in the brief, which purport to be an argument that based upon *existing* law in the State of Georgia the plaintiffs have stated a claim for either negligent bailment or negligent entrustment on which relief could be granted. No argument is made in the brief for an extension or reversal of existing law, a fact which both Mr. Worozbyt and Mr. Kiser conceded at the evidentiary hearings held in this case. Rather, the brief purports to state that under existing law, "Judson Lyle's widow has a right to sue Defendant for its independent negligence in negligent-

ly issuing keys, and negligently allowing Randy Krom to fly the airplane by not getting his old keys from him, when they knew he was not proficient and qualified to fly certain aircraft." Mr. Worozbyt argued for the first time in this case at the evidentiary hearing that this argument is a request that this court adopt the position taken by the dissent in *Robinson v. Pollard*, 131 Ga.App. 105, 205 S.E.2d 86 (1974), which contended that Georgia should follow the majority of jurisdictions and adopt the so-called "special circumstances" theory of negligence. However, that argument is contained nowhere in the brief, nor did counsel acknowledge in the brief that at the present time it is the majority opinion in *Robinson* which is the law in the State of Georgia.

The court credits the testimony of Messrs. Worozbyt and Morrison that since Mr. Kiser was lead counsel on the case, they authorized him to sign their names to pleadings, such that they never physically held the pen which signed their names to the papers filed with this court. Indeed, as conceded in Mr. Worozbyt's brief, which was adopted by Mr. Morrison, neither of those attorneys read any of the pleadings filed in this case prior to permitting their signature to be affixed to them, and having them filed with this court. The complaint, however, though presumably drafted by Mr. Kiser, appears to be an exception to the testimony of both Mr. Morrison and Mr. Worozbyt, since the signatures of those attorneys on the complaint are clearly in a different hand than Mr. Kiser's and are different from the signatures which appear on later pleadings in the case.

### B. CONCLUSIONS OF LAW.

█ Rule 11 of the *Federal Rules of Civil Procedure* was amended in 1983 to provide as follows:

Every pleading, motion, and other paper of a party represented by an attorney shall be signed by at least one attorney of record in his individual name.... The signature of an attorney or party constitutes a certificate by him *that he has read* the pleading, motion, or other paper; *that to the best of his knowledge, information, and belief formed after reasonable inquiry it is well grounded in fact and is warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law,* and that it is not interposed for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation.

The plain meaning of the amended rule is that every signature on a pleading certifies two things: (1) that the attorney has conducted reasonable inquiry to assure that the pleading is well grounded in fact, and warranted by existing law or constitutes a good faith argument for a change in the existing law; and (2) that the pleading has not been filed in subjective bad faith to harass the opponent or to otherwise prolong the proceedings unnecessarily. Mr. Kiser states in his brief that it is the law in the Eleventh Circuit that sanctions pursuant to Rule 11 are appropriate only where the pleadings are "unreasonable, frivolous, vexatious, or filed in bad faith." Mr. Kiser is incorrect. As the Eleventh Circuit has held in two cases decided prior to the filing of his brief, "The [1983] amendment [to Rule 11] abrogated the bad faith standard in favor of a more stringent objective standard." *Hashemi v. Campaigner Publications, Inc.*, 784 F.2d 1581, 1583 (11th Cir. 1986), *citing Eastway Construction Corp. v. City of New York*, 762 F.2d 243 (2d Cir.1985). The court further noted in *Donaldson v. Clark*, 786 F.2d 1570 (11th Cir. 1986), that Rule 11 now imposes an objective good faith standard, such that the attorney must believe after reasonable inquiry that the contents of the pleading are well grounded both in fact and in law. *Id.,* citing *Eavenson, Auchmuty & Greenwald v. Holtzman*, 775 F.2d 535, 540 (3d Cir. 1985).

Because the amendments to Rule 11 have imposed an affirmative duty on attorneys to conduct an investigation into whether the statements they are making to the court are supported in fact and in law, the absence of bad faith does not prevent a

violation of Rule 11. *See Mohammed v. Union Carbide,* 606 F.Supp. 252, 260 (E.D. Mich.1985); *Rodgers v. Lincoln Towing Service, Inc.,* 596 F.Supp. 13, 22 (N.D.Ill. 1984), *aff'd,* 771 F.2d 194 (7th Cir.1985). As one court has explained:

> Rule 11 imposes an affirmative duty on counsel to make reasonable inquiry into the viability of a pleading before it is signed. Indeed, counsel's signature is an affirmation that reasonable inquiry was in fact made. ... Whether an attorney has complied with the requirements of Rule 11 is determined not by the apparent absence or presence of subjective good faith on the part of the attorney, but rather by the objective reasonableness of his action. Sanctions will therefore be imposed where the court finds that, after reasonable inquiry, a competent attorney could not form a reasonable belief that the pleading is warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law.

*Johnson v. Veterans Administration,* 107 F.R.D. 626, 628 (N.D.Miss.1985) (citations omitted).

 Consistent with Rule 11, an attorney may not merely accept his client's word without ascertaining that the facts support the client's contention. "If all the attorney has is his client's assurance that facts exist or do not exist, when a reasonable inquiry would reveal otherwise, he has not satisfied his obligation." *Coburn Optical Industries, Inc. v. Cilco, Inc.,* 610 F.Supp. 656, 659 (M.D.N.C.1985). Moreover, an attorney's sincere belief that the law warrants the position he has taken is insufficient to satisfy the mandate of Rule 11. Instead, the standard is an objective one, since "there is no position—no matter how absurd—of which an advocate cannot convince himself." *Rodgers v. Lincoln Towing Service,* 596 F.Supp. at 27, quoting *Wells v. Oppenheimer & Company, Inc.,* 101 F.R.D. 358, 359 n. 3 (S.D.N.Y.1984). For that reason, where a reasonable amount of research would have revealed to the attorney that there was no legal foundation for the position taken, Rule 11 sanctions will be imposed. *Id.* at 22.

Rule 11 imposes a duty on attorneys to assure themselves after reasonable inquiry that the position they take is either warranted by existing law, or that they can make a good faith argument for modification in the existing law. The "warranted by existing law" requirement directly ties into the disciplinary rules applicable in the State of Georgia, which provide that an attorney "shall not knowingly advance a claim or defense that is unwarranted under existing law, except that he may advance such claim or defense if it can be supported by good faith argument for an extension, modification, or reversal of existing law." Disciplinary Rule 7–102(A)(2), Canons of Ethics of the State of Georgia. The disciplinary rules continue and expressly mandate that "a lawyer shall disclose legal authority in the controlling jurisdiction known to him to be directly adverse to the position of his client...." D.R. 7–106(B)(1). The reason for such a requirement is obvious: the lawyer's duty zealously to represent the interests of his clients cannot be allowed to override the lawyer's primary duties of candor to the court and loyalty to the system of justice. *In Re: Ronco, Inc.,* 105 F.R.D. 493, 497 (N.D.Ill. 1985). For this reason, the court was greatly disturbed by Mr. Kiser's admission at the evidentiary hearing in this case that he had never heard of such a disciplinary rule or such a requirement, and that he viewed litigation as some type of "game" in which, if the law was against him but his opponent could not find it, that just meant that he was a better player.

 If an attorney wishes to advance an argument which is not "warranted by existing law" and in fact might go directly against existing law, Rule 11 imposes an obligation on the attorney to so specify. As noted above, attorneys for the plaintiff now claim that the amended motion for reconsideration was merely a badly-worded attempt to argue for a change in the law, and an adoption of the dissent's view in *Robinson v. Pollard.* The court finds the

words of the Central District of California in *Blake v. National Casualty Company,* 607 F.Supp. 189 (C.D.Calif.1984), particularly apropos:

> The motion [cannot] be viewed as a "good faith argument for the extension, modification, or reversal of existing law." Rule 11 permits attorneys to challenge precedent and advance novel theories of law, but at some point on a spectrum, such legal arguments become frivolous. This motion is an example. It does not even mention [directly contrary case authority], although the plaintiff's attorney knew of the case before he filed the motion with this court. *If a motion does not mention controlling precedent, it is impossible for this Court to regard the motion as arguing that the precedent should be modified.*

*Blake,* 607 F.Supp at 192 (emphasis added). Judge Schwarzer, a leading commentator on Rule 11, discussed a brief filed in his court by the attorneys who were the subject of a motion for sanctions. He noted that the brief which had been filed was an excellent one, and in fact made an argument for the extension of the law. The brief filed in response to the motion for sanctions, according to Judge Schwarzer, "articulates the argument [the attorneys] sought to present in support of their [original] motion with exemplary clarity and fairness. *The difficulty is that this is not the argument presented when the motion was made." Golden Eagle Distributing Corp. v. Burroughs Corp.,* 103 F.R.D. 124 (N.D. Calif.1984) (emphasis added). The original brief, continued Judge Schwarzer, purported to contain legal arguments warranted by existing law which, once the motion for sanctions had been filed, were dramatically transfigured into an argument for extending the law. The judge continued, "There would be little point to Rule 11 if it tolerated counsel making an argument for the extension of existing law disguised as one based on existing law." *Id.*

■ An attorney can always make an argument *after* a motion for sanctions has been filed that "although the original motion did not really present an argument for the modification of existing law, it does contain the kernel of one." The only place this court can look to determine whether a pleading is designed as an argument for the extension of law is to the pleading itself. As noted above, all counsel in this case have conceded that no argument for the extension of existing law is contained in the amended motion for reconsideration filed in this case. "[P]ost-hoc sleight of hand does not justify, for Rule 11 purposes, an empty or misleading presentation in the first instance." *In Re: Ronco,* 105 F.R.D. 493, 498. Moreover, sanctions are appropriate where it appears that rather than advancing an argument for a change in the law, counsel tries to "squeeze plaintiff's claim into the mold of existing law by wholly reckless and disingenuous presentation of the case." *WSB Electric v. Rank & File Committee,* 103 F.R.D. 417, 420 (N.D.Calif.1984). It is true that the Advisory Notes to Rule 11 indicate that it is not the intent of the rule to chill creativity on the part of counsel, but it is settled law that such creativity must be exercised "in service of a good faith application of the law or at least a good faith request for a change in the law." *Pawlowske v. Chrysler Corp.,* 623 F.Supp. 569, 573 (N.D.Ill. 1985).

■ Mr. Worozbyt and Mr. Morrison suggest in their brief that because they had delegated to Mr. Kiser the authority to sign their names to all of these pleadings, they were relieved of the necessity of reading them and of making the Rule 11 inquiry necessary to support them. This contention is utterly without merit. Mr. Morrison and Mr. Worozbyt apparently signed the complaint themselves and, as to the other pleadings, their names were signed by Mr. Kiser at their express direction. To contend that a lawyer may insulate himself from responsibility under Rule 11 merely by designating someone else as authorized to sign his name or to do the necessary pre-filing inquiry is utterly frivolous. "What Rule 11 requires is that the lawyer who elects to sign a paper take responsibility for it, even if that responsibility is

shared [among many lawyers]." *Coburn Optical Industries, Inc. v. Cilco, Inc.,* 610 F.Supp. at 660 (holding local counsel who signed a pleading prepared by out-of-state counsel, liable for attorney's fees even though local counsel was "no doubt far less culpable than out-of-state counsel and perhaps not at all responsible or liable for the faulty pre-filling investigation."). "Taking responsibility" must include verifying that the drafter of a complaint is not acting contrary to the facts, as he knows them. It also includes reading a pleading to which one's name is signed. As the Ninth Circuit has noted very recently, Rule 11 admits of no exceptions to its requirement that all reasonable attorneys will read documents prior to filing them with the court. *Zaldivar v. City of Los Angeles,* 780 F.2d 823, 830 (9th Cir.1986). For these reasons, the court expressly rejects the argument advanced by Messrs. Worozbyt and Morrison that because they did not share Mr. Kiser's knowledge as to the complaint and because they never read the pleadings to which they authorized their names to be signed, they are not subject to Rule 11.

### C. DISCUSSION.

With regard to the first pleading at issue before this court, the signing of the complaint, the court finds that Messrs. Kiser, Morrison, and Worozbyt have violated Rule 11 of the *Federal Rules of Civil Procedure* in affixing their names to that document.

Mr. Kiser did not conduct the kind of inquiry a reasonable attorney would have conducted given the facts available to him at the date of filing of the complaint. Messrs. Morrison and Worozbyt did not conduct the kind of inquiry a reasonable attorney would have conducted of the drafting attorney. What constitutes reasonable inquiry depends on several factors, and must always be judged under the entire circumstances faced by the attorney at the time. These factors include the amount of time the attorney had to prepare the document; the attorney's ' expertise; the complexity of the legal or factual issue in question; and the extent to which the pleading is supported by reference to case law or to a factual record. *Blake v. National Casualty Company,* 607 F.Supp. at 192.

In the present case, Mr. Kiser had the word of his clients that Krom and Lyle were not the type of people who would steal an airplane; a check payable to the Charlie Brown Flying Club signed by Randy Krom; and the testimony of the service station attendant that the men were not drunk on the night the plane was taken. Based on that information, and that information alone, the court cannot say that there was inadequate factual support for the contention in the original complaint filed in this case that Randy Krom was a member of the flying club, had permission to fly the airplane, and was a rentor/bailee of the airplane, having paid the flying club to use and fly the airplane. Complaint, ¶ 6. This would be so even in the face of knowledge that the flying club had claimed that the plane was stolen, since the check was at least some evidence that Mr. Krom had paid the flying club for some service. Mr. Kiser, however, had more information. He had been told by Mr. Strueber that not only was it the club's position that the airplane had been stolen, but that the basis for that belief was the fact that no one had requested permission to take the airplane, that Krom was not a member of the club section authorized to fly the airplane, and that Krom was not trained in that airplane.

Rule 11 contemplates shifting burdens as additional information is acquired by an attorney. As new facts are obtained, the attorney must continue to review his position to be sure that it is supported by facts and the law. *Woodfork v. Gavin,* 105 F.R.D. 100, 104 (N.D.Miss. 1985). Mr. Kiser had no evidence, then or now, to support his contention in the complaint that Mr. Krom was a rentor/bailee of this airplane in the face of the assertions of Mr. Strueber. Mr. Kiser took no steps ·to determine whether they were true, and merely relied upon his client's assertions that the men would never steal the airplane. The check does not, contrary to Mr.

Kiser's argument, constitute evidence which pierces these facts, since Mr. Strueber did *not* tell Mr. Kiser that Mr. Krom was not a member of the club, but that Mr. Krom was not a member of the club section trained to fly this sophisticated airplane. The court concludes that under all of the circumstances, a reasonable attorney in the position of Mr. Kiser would have taken additional steps to determine whether in fact he could in good faith argue that Mr. Krom had permission to fly the airplane on the night in question. Mr. Kiser, unlike Mr. Morrison and Mr. Worozbyt, was aware of the club's basis for their contention of lack of permission, and should have been aware that none of the facts in his possession at that time pierced the club's statements. The court also concludes that a reasonable attorney in the position of Messrs. Morrison and Worozbyt would have taken additional steps to determine whether Mr. Kiser's investigation subsequent to their own had borne out their original theory of the case.

Had Mr. Strueber merely continued to reiterate that the plane was "stolen," without offering additional support for that view, the court believes that Mr. Kiser was free to ignore Mr. Strueber's contention and proceed with his complaint. A lawyer is not required to believe the attorney for the would-be defendant who states that the plaintiff has "no case." However, where specific facts are proffered to support the view that there is no theory of bailment on which the plaintiff could prevail, it becomes incumbent upon the attorney to take some type of affirmative steps to discover whether in fact he could support a claim of bailment. Mr. Kiser could, for example, have requested Mr. Strueber's permission to speak to his clients. He never did so. He additionally could have asked to see the club logs and records regarding checkout of the airplane, and regarding whether Krom had in fact been trained. He never did so. He could have read the club rules to determine whether Mr. Krom in fact was a member of the club section authorized to fly the plane. He never did so. Mr. Kiser had ample opportunity to make such re-

quests and additionally had more than adequate time. The statute of limitations in this action did not expire until May of 1986, such that there was no pressing need to file the complaint in January of 1985. A reasonable attorney in Mr. Kiser's position would have recognized, as did Mr. Worozbyt and Mr. Morrison, that the permission issue was essential on the question of whether the plaintiff could recover on a bailment theory. Mr. Kiser took no steps to ascertain whether there were facts which would support his claim of bailment. Instead, he filed a complaint asserting that permission had been given, thus embroiling his own client, his co-counsel, and the defendant in discovery which ultimately revealed that Mr. Strueber's contentions were true, and that in fact there had been no permission. No evidence has ever come to light to support the contention in the complaint that Mr. Krom had permission to fly the airplane, and to proceed on a theory of negligent bailment absent such evidence is a great disservice to the court, to the defendant, and to Mr. Kiser's own client.

For the foregoing reasons, the court concludes that Messrs. Eugene Kiser, William Morrison, and Ted Worozbyt have violated Rule 11 in signing their names to the complaint that was filed in this action. The sanctions to be imposed upon the attorneys are discussed below.

The court additionally concludes that both Mr. Morrison and Mr. Worozbyt have violated Rule 11 of the *Federal Rules of Civil Procedure* in affixing their signatures to plaintiff's motion for reconsideration. Mr. Kiser's vocal protestations notwithstanding, the distortion of Mr. Shaw's deposition testimony was calculated to convince the court that it had erred in concluding that there were no disputed questions of fact, and could only have been intended to mislead the court concerning what the record shows and does not show in this action. The court expressly discredits Mr. Kiser's testimony that indentation of the passages and the placement of quotation marks around them was merely clerical error. The court does so based on Mr.

Kiser's initial argument in his own defense concerning this pleading. Mr. Kiser's initial testimony was that he viewed the sentences he placed in quotation marks and indented as permissible "inferences" from Mr. Shaw's testimony. He only began to argue that it was a clerical error after the court informed Mr. Kiser that there is no possible construction of the word "inference" which could turn a false statement concerning the record into the truth. The court finds that Mr. Kiser knew that he was distorting Mr. Shaw's deposition testimony by making up sentences, putting them in quotations, and indenting them in his brief, where he attributed them to Mr. Shaw's sworn testimony. The court is deeply disheartened to realize that there is a member of the bar of this court who is of the opinion that such gross distortion and downright dishonesty is acceptable advocacy. In addition, had Mr. Morrison read the pleading to which he permitted his name to be affixed, as Rule 11 requires, reasonable inquiry into the deposition would certainly have revealed to him that there was no factual basis for the spurious quotes.

 The final pleading subject to defendant's renewed motion for sanctions is plaintiff's amended motion for reconsideration. As noted above in the discussion of the applicable law, any creative attorney can come up with a theory after a motion for sanctions has been filed as to how, even though it was not readily apparent on the face of the pleading, and even though it was not mentioned in the pleading, the pleading actually was supposed to be an argument for an expansion of the law. That is precisely what has occurred in this case. Plaintiff's amended motion for reconsideration purports to be an explanation of this court's grievous error in not recognizing that existing law in the State of Georgia gave Mrs. Lyle a cause of action. This argument was made in the face of a long line of Georgia cases previously cited by the court, and the brief discussed none of those precedents. Nor, as the attorneys have conceded, does the amended motion for reconsideration contain an argument that those precedents should be reversed or

otherwise modified. Every pleading in this case, including the proposed amended complaint and the complaint itself, has proceeded on either a negligent bailment theory or a negligent entrustment theory. As the court has held previously, essential to both of those theories is proof that the vehicle in question was being operated with permission. No argument was made in this case that any non-permission related theory applied. Indeed, Mr. Worozbyt admitted that the argument contained in the amended motion for reconsideration was his idea, and was predicated upon the dissent in *Robinson v. Pollard*. That case is never cited in the amended motion for reconsideration, and the argument is presented as one warranted by existing law. The court concludes that this pleading was also signed in violation of Rule 11 of the *Federal Rules of Civil Procedure*. It could not possibly have been based upon reasonable inquiry into existing law, and it nowhere contains a good faith argument for the reversal or modification of that law. The arguments of Mr. Worozbyt and Mr. Morrison concerning their lack of responsibility for the contents of this pleading are directly contradicted by Mr. Worozbyt's statement that the argument advanced in this amended motion for reconsideration was his. Additionally, both Mr. Worozbyt and Mr. Morrison have conceded in their brief that they did not read the pleadings to which they permitted their names to be signed.

 Messrs. Worozbyt and Morrison additionally advance an estoppel argument in their briefs, which contends that because the defendants waited eight months before filing their motion for sanctions in this action, they have somehow waived their right to insist upon compliance with Rule 11. Of course, no argument could be made that this contention, even if true, in any way estops this court from fulfilling its obligations to enforce Rule 11. Additionally, however, the court finds that the unrefuted argument advanced in the defendant's reply brief is persuasive. When Mr. Kiser went ahead and filed the complaint in the face of Mr. Strueber's statements to

him, the defendant could not file a motion for sanctions until it determined whether Mr. Kiser perhaps had access to facts which defendant's counsel did not know. For that reason, the defendant waited until the conclusion of discovery before filing its motions for sanctions. The motion for sanctions relating to the other two pleadings at issue was promptly filed.

### D. SANCTIONS.

█ Had plaintiff's counsel conducted reasonable inquiry prior to filing the complaint, they would have discovered what has ultimately been proved to be the case, which is that no evidence supports the claim that Mr. Krom had permission to fly the airplane on the night in question. The defendant would have been spared the necessity of briefing the permission issue in order to prove that neither the negligent bailment theory nor the negligent entrustment theory provided the plaintiff with a cause of action. Therefore, the court concludes that as its first sanction, it will require plaintiff's counsel to reimburse the defendant for all attorney's fees and costs expended in engaging in and responding to discovery related to the permission issue, and in researching, writing and filing briefs addressed to the theories of negligent entrustment and negligent bailment. This cost may not be passed on to the client. Neither is this a license for the defendant to attempt to charge plaintiff's counsel with all expenses incurred in this case, since many of the issues researched and as to which discovery was conducted are unrelated to the permission issue.

As to the motion for reconsideration and the amended motion for reconsideration, the court has concluded that the defendant should be compensated for the attorney's fees expended in filing a response to those motions. As to the former, the sanction shall be imposed on Messrs. Kiser and Morrison, and as to the latter all three attorneys shall be personally liable. None of these fees shall be paid by Mrs. Lyle.

Finally, the court has concluded that it will regard compensation for defendant's attorneys fees incurred in preparation of the renewed motion for sanctions, for the time spent at the evidentiary hearing on that motion, and for the time spent researching and preparing the brief in response to the briefs of Messrs. Kiser, Worozbyt, and Morrison.

Within thirty (30) days from the date of receipt of this order, the defendant is DIRECTED to prepare and file an affidavit documenting actual hours, fees and expenses incurred in the areas referenced above and addressing the reasonableness of these items under *Johnson v. Georgia Highway Express*, 488 F.2d 714 (5th Cir. 1974). Plaintiff's counsel shall, within fifteen (15) days from receipt of defendant's pleading, either pay the requested fees and costs or file a pleading objecting to their reasonableness under *Johnson*.

In summary, all of plaintiff's counsel are DIRECTED to compensate the defendant for all attorney's fees and costs related to the permission issue, negligent bailment, and negligent entrustment. Mr. Kiser and Mr. Morrison are DIRECTED to compensate the defendant for responding to the motion for reconsideration. Mr. Kiser, Mr. Morrison and Mr. Worozbyt are DIRECTED to compensate the defendant for the attorney's fees and costs in responding to the amended motion for reconsideration, and all three attorneys are further DIRECTED to compensate the defendant for the time spent researching and drafting the renewed motion for sanctions, at the evidentiary hearing held in this case, and researching and drafting the reply brief filed on May 28, 1986.

In view of the flagrant misrepresentation of the deposition testimony which the court has found in this case in the motion for reconsideration, and considering the goals of both general and specific deterrence, the court has concluded that a further sanction is in order. This sanction shall take the form of a public reprimand. The Clerk of Court is DIRECTED to cause to be published in the *Fulton County Daily Reporter*, the following notice which shall consume not less than one-eighth of a page:

NOTICE

By Order of The Honorable J. Owen Forrester, United States District Judge for the Northern District of Georgia, Attorneys *Eugene R. Kiser and William A. Morrison* are *reprimanded* for the following violation of Rule 11 of the Federal Rules of Civil Procedure, which occurred in Civil Action Number C85–0159A, *Lyle vs. Charlie Brown Flying Club, Inc.*:

Mr. Kiser and Mr. Morrison, in a motion for reconsideration filed January 8, 1986, intentionally misrepresented to the court the facts contained in the record of the case. Specifically, the two attorneys purported to quote directly from the deposition testimony of a witness on a material issue. In actual fact, however, *the statements recited by the attorneys do not appear anywhere in the deposition* and are contrary to the entire tenor of the witness' testimony.

For the benefit of the Clerk, the words and phrases which are underlined in the notice above are to appear in bold-face type in the *Fulton County Daily Reporter.* Once the reprimand has been run, and the Clerk's Office receives a bill from the *Fulton County Daily Reporter,* Attorneys Kiser and Morrison are DIRECTED to reimburse the Clerk for the cost of the advertisement. Said payment shall be made within ten (10) days from the date of receipt of the invoice from the Clerk's Office.

Finally, the Clerk of Court is DIRECTED to forward a copy of all of the court's orders in this case to the Committee on Discipline of the State Bar of Georgia. For the reasons which appear herein, the defendant's renewed motion for sanctions is GRANTED IN PART and DENIED IN PART.