COLLIN COUNTY, TEXAS, Plaintiff,

v.

HOMEOWNERS ASSOCIATION FOR VALUES ESSENTIAL TO NEIGHBORHOODS (HAVEN), et al., Defendants.

CARROLLTON H.A.V.E.N., INC., Counterplaintiff,

v.

William J. ROBERTS, County Judge, Wallace Webb, Howard Thornton, Richard May, and Jerry Hoagland, Collin County Commissioners, Counterdefendants.

Civ. A. No. CA3–84–0376–D.

United States District Court,
N.D. Texas,
Dallas Division.

Jan. 30, 1987.

Don R. Windle, Law Offices of Don R. Windle, P.C., Denton, Tex., for Denton County.

William J. Roberts, Plano, Tex., pro se.

David Bryant and R. Matthew Molash, Hughes & Luce, Dallas, Tex., for Collin County.

Jean G. Rogers, Regional Counsel, Federal Highway Admin., Fort Worth, Tex.

James O. Price, Counsel, Federal Highway Admin., Fort Worth, Tex.

Mary Ann Moore, Asst. U.S. Atty., Office of U.S. Atty., Dallas, Tex., for defendant Federal Highway Admin.

Walter A. Cober, Grand Prairie, Tex., for defendant HAVEN.

David R. Thomas, Asst. Atty. Gen., Dallas, Tex., for State defendants.

Patrick R. Cowlishaw, Cohan, Simpson, Cowlishaw, Aranza & Wulff, Dallas, Tex., for the City of Carrollton.

Kent Hofmeister, Dallas, Tex., for the City of Dallas.

Charles Hinton, Garland, Tex., for the City of Garland.

Gary Chattham, Plano, Tex., for the City of Plano.

William H. Pool, Asst. Dist. Atty., Dallas, Tex., for Dallas County.

## MEMORANDUM OPINION AND ORDER

FITZWATER, District Judge.

On motion to dismiss the court must decide whether the County Judge and County Commissioners of Collin County, Texas enjoy absolute immunity from suit, whether counterplaintiff has stated a civil rights claim against them, and, if counterdefendants are immune or counterplaintiff has failed to state a claim, whether the court should dismiss this civil action or permit counterplaintiff to replead. The court concludes that counterdefendants are immune, that the counterclaim fails to state a claim, and that counterplaintiff should be given one more opportunity "to plead its best case."

### I.

### BACKGROUND

Plaintiff, Collin County, Texas ("Collin County"), concerned that the efforts of a citizen group might substantially delay the construction of proposed Texas State Highway 190 ("SH 190"), has filed this class action pursuant to 28 U.S.C. §§ 2201 and 2202 to obtain a declaratory judgment that the SH 190 final environmental impact statement ("FEIS") is sufficient. Collin County also requests as contingent relief that, if the environmental impact statement is found sufficient, the court enjoin an unincorporated association[1] of residents, homeowners, property owners, and others, known as Homeowners Association for Values Essential to Neighborhoods ("HAVEN"), from interfering with construction of the highway. Plaintiff has joined as nominal defendants several surrounding cities, and federal and state agencies, for purposes of the declaratory judgment action.[2]

1. In its counterclaim, HAVEN's president states on oath that he is president of "Carrollton H.A. V.E.N., Inc., a Texas non-profit corporation." For purposes of deciding the instant motion, the legal status of HAVEN is immaterial. *But see infra* at 950 where, with respect to HAVEN's § 1985 claim, the court concludes that HAVEN is not a "class."

2. By order entered October 17, 1986 the court realigned the cities of Dallas and Garland, Texas as plaintiffs.

HAVEN has concluded that the County's lawsuit is an attempt to deprive its members of their civil rights. Fifteen days after this civil action was filed HAVEN filed a counterclaim against the County Judge and County Commissioners of Collin County, Texas, in their official and individual capacities (collectively "the Commissioners"). By its counterclaim HAVEN seeks to recover unspecified actual damages, $6 million exemplary damages, up to $270,000 in attorney's fees, and court costs, pursuant to 42 U.S.C. §§ 1983 and 1985 and theories of malicious prosecution and abuse of legal process. HAVEN contends the Commissioners have deprived its members of their administrative remedies, of their rights under the Fourteenth Amendment, and of their right of free speech guaranteed by the "Fourth" Amendment,[3] and that the Commissioners are guilty of malicious prosecution and abuse of legal process.

The Commissioners now move to dismiss the counterclaim pursuant to Rule 12(b)(6). As it is required to do, the court has viewed the allegations of the counterclaim and the inferences therefrom in the light most favorable to HAVEN. *Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974). *See Watts v. Graves*, 720 F.2d 1416, 1419 (5th Cir.1983) (the allegations of the complaint must be accepted as true along with any inferences that may be drawn therefrom). The task has been arduous indeed, for it may be safely said that the allegations constitute primarily the blunderbuss phrasing of arguable claims that Judge Brown so aptly characterized in *Elliott v. Perez*, 751 F.2d 1472, 1476 (5th Cir.1985).

*HAVEN's Contentions*

In October 1977 the Texas State Department of Highways and Public Transportation ("DHPT") designated SH 190 as an East-West controlled access highway, to run between Interstate Highway 35E on the West and State Highway 78 on the East. Generally, SH 190 was proposed as an eight-lane East-West limited access highway, with four lanes of access roads, whose purpose was to relieve traffic congestion on Beltline Road and to accommodate and prevent future traffic congestion generated by the growth of the cities through which SH 190 was to pass. DHPT proposed that the segment be financed in accordance with the Federal Primary Aid System. Approximately 75% of the proposed planning, designing, acquisition of right-of-way and construction funds necessary to build the road were to be obtained from the Federal Highway Administration ("FHWA") upon its approving DHPT's application for such funds.

As required by the National Environmental Policy Act ("NEPA"), 42 U.S.C. §§ 4321 *et seq.*, the Secretary of the Department of Transportation ("DOT"), of which FHWA is a part, had promulgated regulations to ensure compliance with NEPA in connection with FHWA's financing the Federal Primary Aid System. One such regulation adopted by the Secretary was the requirement that, on all major and significant federal actions approved or performed by FHWA, an environmental impact statement be prepared after receiving public comment. The law provides a 30-day comment period after approval of the FEIS so that FHWA and DOT may review and investigate any adverse economic, social, and environmental impacts before entering into final approval of the project and before approving requested federal funding. *See* 23 U.S.C. §§ 101 *et seq.* If the adverse impacts violate federal or state law, or if the decisions are arbitrary and capricious, those parties who have objected to the adverse environmental impact of the project are authorized by the Administrative Procedure Act, 5 U.S.C. §§ 701–706, to com-

---

**3.** HAVEN repeatedly refers in its counterclaim to a "Fourth Amendment" right of free speech. (Counterclaim at 38, 40, 41). The Fourth Amendment, of course, concerns the issuance of warrants and the right of persons to be free from unreasonable searches and seizures. *Unit-* *ed States v. Sharpe*, 470 U.S. 675, 105 S.Ct. 1568, 1573, 84 L.Ed.2d 605 (1985); *Jones v. United States*, 357 U.S. 493, 498, 78 S.Ct. 1253, 1256, 2 L.Ed.2d 1514 (1958). This is but one of several examples of careless pleading found in HAVEN's papers. *See* discussion of Rule 11, *infra.*

mence an action in U.S. District Court for review of the legality of the administration, practices, and procedures followed by the federal agency in approving the project.

On July 23, 1981 FHWA issued a draft environmental impact statement. The County Judge and Commissioners of Collin County knew at this time that the route that SH 190 was to take through the City of Carrollton, Texas, along Trinity Mills Road, was being opposed on various social, economic, and environmental grounds by homeowner groups and individuals. The comments of the opposition groups were contained in the draft statement's comment section.

On or about February 12, 1984, after considering the draft statement, FHWA approved the FEIS for publication in the *Federal Register.* Public comment to the FEIS followed in accordance with applicable DOT regulations. The 30–day comment period expired on March 11, 1984.

According to HAVEN, the Commissioners began to meet privately among themselves and with their attorney regarding how to prevent a perceived possible delay or change in the construction of SH 190 caused by the opposition of HAVEN and others. They were aware that those who opposed the Trinity Mills Road location were attempting to establish one or two alternative routes. These discussions commenced on or about January 25, 1984 and continued until March 12, 1984, when this civil action was filed.

HAVEN alleges that the Commissioners knew, were informed, or should have known, that there was a 30–day comment period following publication of the FEIS in the *Federal Register.* Therefore, the Commissioners devised a plan to file this civil action to request this court to uphold the sufficiency of the FEIS. The plan was designed intentionally so that the lawsuit would be filed on the first day after the 30–day comment period had expired. The discussions were deliberately concealed from the public so as to have maximum legal and media effect. The Commissioners contemplated that suit be filed on the first day after the comment period had expired so as to prevent HAVEN from filing a suit and to prevent HAVEN from pursuing its administrative and review remedies after the expiration of the comment period. The Commissioners intended, by filing their action, to deprive HAVEN of procedural adverse action within the normal FHWA procedures and to preempt HAVEN from filing a lawsuit prior to the Commissioners' lawsuit.

HAVEN avers that this plan included certain elements which were designed to have the maximum adverse effects on HAVEN: First, by bringing a class action against HAVEN as representative of all of the inhabitants in and near the City of Carrollton, HAVEN would be forced to employ attorneys and defend the cause or suffer a default judgment. The Commissioners knew or should have known that only those class members who had objected to the FEIS or draft statement could be interested parties. Their allegations were deliberately framed to allege a larger class of citizens than could be legally feasible. In the event of a default judgment, the doctrine of *res judicata* would forever bar subsequent legal or procedural actions taken by HAVEN based upon adverse environmental impact of SH 190. Second, by suing HAVEN and others, the Commissioners knew they were forcing HAVEN to expend its limited funds to protect itself. The Commissioners also intended to increase HAVEN's legal costs by adding approximately 63,000 other residents of Carrollton as parties. Third, by filing the lawsuit when they did the Commissioners reasoned and discussed that they would have a greater voice and control in the forum and timing of the lawsuit, to the disadvantage of HAVEN. Fourth, the Commissioners knew, or should have known, that they would prevent HAVEN from pursuing its administrative and legal rights because HAVEN would be required to expend money and time in the lawsuit filed by the Commissioners. Fifth, the Commissioners knew, or should have known that, by filing the cause at the time and in the forum of

their choosing, they could minimize the possible adverse media coverage of the issue of the adverse environmental impacts on Carrollton which HAVEN and others claimed were significant and adverse. The Commissioners knew that by filing the lawsuit they could make it a media event, thus maximizing the possible adverse media coverage to HAVEN.

According to HAVEN, the Commissioners, in order to accomplish their plan, took the following actions to deprive HAVEN of its administrative and legal remedies: First, the Commissioners, without a public meeting, discussed and authorized their attorney to prepare the papers to commence the instant lawsuit, deliberately concealing such papers and plans from the media and the public. Second, their attorney agreed to prepare and present documents for the Commissioners on March 12, 1984 and agreed not to reveal their discussions or the proposed action to the media and public. The Commissioners made this oral, private, and illegal agreement and agreed to pay the attorney from county funds. Third, the attorney arranged to have another attorney present at the federal courthouse so that, upon the Commissioners' approval, the complaint could be filed at the earliest possible time on that day.

During the March 12, 1984 public meeting of the Commissioners, one commissioner requested a recess in order to discuss with his own counsel the legality of filing the lawsuit. The other commissioners refused the request. On motion, the Commissioners authorized the lawsuit "in the first public action or discussion ever held publicly on the matter of record." The approval and authorization of the filing of

the lawsuit constituted the fulfillment of a malicious, premeditated, illegal action and conspiracy, which is and was beyond the authorization of the Commissioners acting for Collin County and in direct violation and obstruction of certain federal statutes and provisions of the U.S. Constitution.

HAVEN translates the foregoing allegations into three substantive counts which, in turn and not altogether clearly, manifest themselves as causes of action under 42 U.S.C. §§ 1983 and 1985 and for malicious prosecution and abuse of legal process.[4]

## II.

## DISCUSSION

■ The court begins its analysis cognizant of two familiar principles: First, the court should not dismiss this case unless it appears beyond a doubt that HAVEN can prove no set of facts in support of its counterclaim which would entitle it to relief. *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–02, 2 L.Ed.2d 80 (1957). Second, where, as here, counterdefendants have raised the defense of immunity, the applicability of the defense should be decided as a threshold question. *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982). Whether an official's immunity is absolute or qualified, allowing any but perhaps the most preliminary proceedings on the immunity-barred claim runs squarely counter to the doctrine's basic purpose. *Elliott*, 751 F.2d at 1478. Therefore, once a defendant adequately raises the issue of immunity— qualified[5] or absolute—the district court should on its own require of the plaintiff a detailed complaint alleging with particulari-

---

**4.** It is unclear whether HAVEN alleges claims of malicious prosecution and abuse of legal process as predicate offenses that give rise to a 42 U.S.C. § 1983 remedy or as pendent state claims. The court has treated them below as predicate claims. Regardless whether they are intended by HAVEN to be predicate or pendent claims, the court concludes that neither claim provides a basis for granting relief.

**5.** The Commissioners' qualified, good faith immunity—as opposed to absolute immunity—defense can insulate them only from liability in

their individual capacities. It has no effect on their liability in their official capacities in suits in which they are otherwise susceptible to damage awards. Actions for damages against a party in his official capacity are, in essence, actions against the governmental entity of which the officer is an agent. Thus, damages may be awarded against a defendant in his official capacity if they would be available against the government itself. *Familias Unidas v. Briscoe*, 619 F.2d 391, 403 (5th Cir.1980).

ty all material facts on which he contends he will establish his right to recovery, which will include detailed facts supporting the contention that the plea of immunity cannot be sustained. *Id.* at 1482. The complaint cannot be cast in broad, indefinite, and conclusory terms. *Id.* at 1479; *Brown v. Texas A & M University*, 804 F.2d 327, 333 (5th Cir.1986) (qualified immunity case). Mindful of the governing principles, the court assesses the adequacy of HAVEN's counterclaim.[6]

## A. Absolute Immunity

■ The court first considers the Commissioners' defense of absolute legislative immunity.[7] Local legislators enjoy absolute immunity for conduct in furtherance of their legislative duties. *Espanola Way Corp. v. Meyerson*, 690 F.2d 827, 829 (11th Cir.1982), *cert. denied*, 460 U.S. 1039, 103 S.Ct. 1431, 75 L.Ed.2d 791 (1983); *Wells v. Hutchinson*, 499 F.Supp. 174, 185 (E.D. Tex.1980). Examples of protected legislative actions are a mayor's vetoing an ordinance passed by the city's legislative body, *Hernandez v. City of Lafayette*, 643 F.2d 1188, 1194 (5th Cir.1981), *cert. denied*, 455 U.S. 907, 102 S.Ct. 1251, 71 L.Ed.2d 444 (1982), the examining of a plaintiff before a legislative committee, *Tenney v. Brandhove*, 341 U.S. 367, 377–78, 71 S.Ct. 783, 788–89, 95 L.Ed. 1019 (1951), and voting on controverted ordinances despite having had prior meetings with partisans to one side of a zoning controversy, *Bruce v. Riddle*, 631 F.2d 272; 279–80 (4th Cir.1980).

It is settled, of course, that absolute legislative immunity is available only for actions taken and decisions made within the sphere of legitimate legislative activity. *Tenney*, 341 U.S. at 377, 71 S.Ct. at 788; *Affiliated Capital Corp. v. City of Houston*, 735 F.2d 1555, 1568 (5th Cir.1984). Here, HAVEN alleges that the Commissioners conspired to injure HAVEN, that their actions were "ultra vires" in character, and that they acted outside their capacities as public officials. If supported by specific facts, such allegations arguably would deprive the Commissioners of Rule 12(b)(6) dismissal based upon an absolute immunity defense. However, as the Fifth Circuit teaches in *Elliott*, the broad, conclusory allegations made by HAVEN are inadequate in the face of an immunity defense. 751 F.2d at 1479. Accordingly, the court grants the motion to dismiss.

**6.** HAVEN attempts to interpose two procedural roadblocks to the motion to dismiss that can be rejected at the outset. First, HAVEN repeatedly contends (HAVEN Br. at 6, 15, 16, 18, 20, and 21) that the Commissioners, by failing to deny the factual allegations of HAVEN's counterclaim, have admitted them by operation of Rule 7(a). This rule does not support HAVEN's position. The rule to which HAVEN *may* have reference is Rule 8(d); even so, Rule 8(d) does not deem HAVEN's allegations to be admitted. Rule 8(d) expressly applies to "required" responsive pleadings. The required pleading in response to a counterclaim is a "reply." *See* Rule 7(a). Rule 12(b) allows certain defenses to be raised in a motion *prior* to pleading, at the option of the pleader. Rule 12(b); *see* 2A J. Moore & J. Lucas, Moore's Federal Practice ¶ 12.05 at 12–32 (2d Ed.1986). If such a motion is filed the required responsive pleading is excused until the court denies the motion or postpones its disposition. *See* Rule 12(a).

Second, HAVEN contends the Commissioners cannot raise by Rule 12(b)(6) motion their defense of immunity. (HAVEN Br. at 14–15). As recently as in *Gagne v. City of Galveston*, 805 F.2d 558 (5th Cir.1986), and *Jacquez v. Procuni-*

*er*, 801 F.2d 789 (5th Cir.1986), the Fifth Circuit sustained the defense of qualified immunity raised by Rule 12(b)(6) motion to dismiss. Indeed, because the immunity doctrine has as a paramount purpose the shielding of public officials not only from liability but from the burdens of suit itself, including pretrial discovery, *Mitchell v. Forsyth*, 472 U.S. 511, 105 S.Ct. 2806, 2816, 86 L.Ed.2d 411 (1985), the motion to dismiss would seem to be an especially appropriate procedural device where immunity is raised as a defense.

**7.** The County Judge contends that he is absolutely immune on the ground that all his actions were taken in a judicial capacity. The court concludes that his actions were not "judicial" in nature. *See Thomas v. Sams*, 734 F.2d 185, 189–190 (5th Cir.1984), *cert. denied*, 472 U.S. 1017, 105 S.Ct. 3476, 87 L.Ed.2d 612 (1985) (setting forth test for whether acts of judge are "judicial"). However, in Texas a county judge acts in several capacities, one of which is legislative. *See Familias Unidas*, 619 F.2d at 404. The court concludes that County Judge Roberts enjoys absolute legislative immunity for the same reasons as do the Commissioners.

Although the court concludes that the Commissioners are entitled to dismissal on the basis that they are absolutely immune from HAVEN's counterclaim, because HAVEN may on repleading be able to circumvent the defense, the court considers whether HAVEN's substantive allegations state a claim.

## B. Section 1985 Claim

■ HAVEN's 42 U.S.C. § 1985 claim can be dismissed without extended discussion. Section 1985(1)[8] is, by its terms, inapposite to the facts of the instant case. Sections 1985(2) and (3) do not apply because HAVEN has failed to allege that the Commissioners' actions are the result of racial or class-based animus, which is required in an action brought under either § 1985(2) or § 1985(3). *Griffin v. Breckenridge,* 403 U.S. 88, 101–102, 91 S.Ct. 1790, 1797–1798, 29 L.Ed.2d 338 (1971) (subpart (3) decision); *McLellan v. Mississippi Power & Light Co.,* 545 F.2d 919, 924 (5th Cir.1977) (en banc) (same); *Kimble v. D.J. McDuffy, Inc.,* 648 F.2d 340, 348 (5th Cir. 1981) (en banc) (subpart (2) decision); *Slavin v. Curry,* 574 F.2d 1256, 1262, *modified,* 583 F.2d 779 (5th Cir.1978) (same). HAVEN does not even allege the racial composition of its membership. HAVEN cannot constitute a "class" because a class must be based on political beliefs or association or have common characteristics of an inherent nature. *Kimble,* 648 F.2d at 347. At most, HAVEN's members have a common complaint (the proposed route and perceived negative environmental impact of SH 190). Persons with only a common complaint, however, are not considered members of a class for purposes of § 1985. *Id.*

## C. Section 1983 Claim

In three counts HAVEN attempts to assert certain constitutional and federal statutory violations as predicate offenses for recovery under 42 U.S.C. § 1983,[9] each of which the court finds does not state a claim.

*Count I*

■ In Count I HAVEN contends the Commissioners' actions in connection with filing this action were the product of a conspiracy and constitute a deprivation of HAVEN's administrative remedies to object to and comment on the FEIS during the 30–day comment period. HAVEN also posits that such acts preclude HAVEN from challenging FHWA approval of the FEIS in U.S. District Court in accordance with the APA and NEPA. According to HAVEN, the Commissioners knew, or should have known, that they lacked probable cause to file suit because they did not attack or challenge the validity of the regulations implementing the applicable federal laws or their constitutionality.

HAVEN contends it is a non-profit private corporation, composed of several hundred members, which has never had contact with Collin County, Texas, and which has never done anything to Collin County to justify or encourage the County to harass or intimidate and cost HAVEN's members the loss of time and money and de-

---

8. Section 1985(1):

> If two or more persons in any State or Territory conspire to prevent, by force, intimidation, or threat, any person from accepting or holding any office, trust, or place of confidence under the United States, or from discharging any duties thereof; or to induce by like means any officer of the United States to leave any State, district, or place, where his duties as an officer are required to be performed, or to injure him in his person or property on account of his lawful discharge of the duties of his office, or while engaged in the lawful discharge thereof, or to injure his property so as to molest, interrupt, hinder, or impede him in the discharge of his official duties....

9. It appears that HAVEN also attempts to assert as predicate offenses various Texas state law violations, *e.g.,* Texas Open Meetings Act, TEX. REV.CIV.STAT.ANN. art. 6252–17 (Vernon Supp.1987) (*see* Counterclaim ¶¶ 15, 18, 22(a)-(d)). Section 1983, of course, creates a remedy for violations of *federal* law or the U.S. Constitution. *See Martinez v. State of California,* 444 U.S. 277, 284, 100 S.Ct. 553, 558, 62 L.Ed.2d 481 (1980) (first question in any § 1983 suit is whether plaintiff has been deprived of a right secured by the Constitution and laws of the United States).

prive HAVEN and its members of the civil rights and privileges and immunities secured by the U.S. Constitution and laws. According to HAVEN, the Commissioners, by their actions, are harassing and attempting to economically coerce HAVEN and its members by this lawsuit without probable cause; by intimidation through adverse press releases and illegal actions, the Commissioners are seeking to deprive HAVEN and its members of congressionally mandated rights of administrative procedures and review.

HAVEN's assertion that the Commissioners' lawsuit deprived its members of their right to comment on the FEIS during the 30–day comment period is refuted by HAVEN's own counterclaim, wherein HAVEN concedes that the Commissioners did not file this action until the day *after* the comment period had expired. HAVEN thus could not have been denied a constitutional or statutory right, assuming one existed.

HAVEN's allegation that the lawsuit denied its members effective judicial review of the FEIS as contemplated by the APA is baseless. Pursuant to the APA, 5 U.S.C. §§ 551 *et seq.*, 701 *et seq.*, HAVEN was free to file an action in district court and contend the FEIS is invalid. The Commissioners' lawsuit did not legally foreclose HAVEN from doing so. If HAVEN failed to seek such review its failure was voluntary. HAVEN, in fact, concedes the speculative nature of any harm to its ability to seek judicial review. HAVEN admits in its counterclaim that "This Congressionally mandated right ... has been, *if* Plaintiffs [sic] lawsuit is successful, destroyed by this action...." (Counterclaim at ¶ 30) (emphasis added).

HAVEN also avers in Count I that the Commissioners have filed this lawsuit and conspired together in order to intimidate and harass HAVEN, to deprive its members of their civil rights, and to cost HAVEN's members time and money by requir-

ing that they either respond to a lawsuit filed without probable cause or suffer a possible default judgment. A conspiracy to violate § 1983, of course, does not state a claim. It remains necessary to prove an actual deprivation of a constitutional or federal statutory right. Without such a deprivation a defendant has no liability under § 1983. *Kaplan v. Clear Lake City Water Authority,* 794 F.2d 1059, 1065 (5th Cir.1986). Moreover, under the heightened pleading requirements of *Elliott v. Perez,* HAVEN's conclusory allegations that the Commissioner's lawsuit was undertaken to harass and intimidate HAVEN and to cost it time and money are insufficient.[10]

*Count II*

In Count II HAVEN contends the Commissioners' lawsuit was filed pursuant to a conspiracy, and without probable cause, and with the aim and intention of harassing, intimidating, and economically coercing HAVEN and its members, among others. HAVEN also alleges the lawsuit constitutes an abuse of legal process, is illegal, and constitutes malicious prosecution because the Commissioners' actions are forbidden under the Civil Rights Act. According to HAVEN, the Commissioners knew, or should have known, that their actions went beyond their state statutory and constitutional authority and violated paramount federal law. The Commissioners, in violating such statutes deliberately and maliciously, violated their oath of office and acted as individuals and beyond their authority as county officials. Their illegal acts were "ultra vires and tortuous [sic] in nature" and were designed to deprive HAVEN, its members, and others of their Fourteenth Amendment right of due process of law.

HAVEN also contends there is no known legal remedy or authority for the Commissioners' lawsuit to obtain a ruling that the FEIS is sufficient, that court intervention is normally reserved for judicial review of an agency decision, that the technical ex-

---

**10.** HAVEN also alleges that it has been deprived of its administrative remedies by intimidation through "adverse press releases and illegal ac-

tions." (Counterclaim ¶ 36). These contentions are so factually anemic as to defy enlightened discussion.

pertise necessary to evaluate the environmental impact of SH 190 is reposed in the FHWA, and that the Commissioners' lawsuit could not have been filed in good faith or with probable cause, and thus evidences an abuse of legal process, "because its allegations evidence the lack of proper authority and grounds." According to HAVEN, if there is such a cause of action as the Commissioners contend, the Commissioners have failed to allege certain elements of social, economic, or environmental significance that must be alleged and proven; that the Commissioners have not done so supposedly evidences the malicious nature of their action.

As to the Commissioners' request that the court terminate SH 190 at a location described in the complaint, HAVEN contends there is no such action or legal remedy known to American law and the court is powerless to dictate the route of the road or where it starts and stops. That the Commissioners did not "file under the Federal Mandamus Act" or pray for such relief shows that they knew or should have known that no such court order was probable. Therefore, the allegations of the complaint are evidence of an abuse of legal process and malicious prosecution to deprive HAVEN, its members, and others of administrative and legal rights to which they are entitled by due process of law, including a meaningful review of possible adverse environmental impacts as voiced by them.

As is apparent, HAVEN's contentions in Count II are similar to those in Count I. In sum, HAVEN contends the Commissioners brought the lawsuit as a result of a conspiracy, without probable cause, and with the intent to harass, intimidate, and economically coerce HAVEN and that such acts constitute abuse of legal process and malicious prosecution "and are forbidden under the CRA as above described." [11] According to HAVEN, the Commissioners' acts were designed to deprive HAVEN of

its administrative and legal rights and, in turn, its Fourteenth Amendment due process rights.

■ The court concludes that Count II of HAVEN's counterclaim also fails to state a claim. As noted above, the filing of the instant civil action did not, as a matter of law, preclude HAVEN from pursuing judicial review of the FEIS. To the extent HAVEN alleges that the lawsuit was merely a device or artifice to injure HAVEN economically or to cause its members to expend their time, HAVEN has wholly failed to specify the facts that undergird such a claim, as required by *Elliott* when an immunity defense is raised. 751 F.2d at 1482. To the contrary, HAVEN makes it abundantly clear that, had the Commissioners not filed this lawsuit, HAVEN would itself have instigated judicial review of the FEIS. It is reasonable to assume that HAVEN would have expended time and funds prosecuting its own suit, which Collin County would likely have opposed on the grounds that it will present to this court as a basis for granting declaratory relief.

■ HAVEN has not shown that the Commissioners violated a single law by filing their lawsuit. Indeed, 28 U.S.C. §§ 2201 and 2202 permit such an action. HAVEN devotes much of its counterclaim to the premise that the Commissioners' lawsuit is substantively without merit because it seeks declaratory relief rather than affirmation, through judicial review, of the legality of the FEIS. The Commissioners, however, have not violated a constitutional or federal statutory right enjoyed by HAVEN even if this court should later rule against the Commissioners on the merits of their claim. That a lawsuit lacks substantive merit does not, without more, constitute a due process violation. This is so because one does not have a due process right not to be sued. *See Beker Phosphate Corp. v. Muirhead*, 581 F.2d 1187, 1189 (5th Cir.1978) (allegation of systematic mis-

---

**11.** If by the term "CRA" HAVEN includes § 1983, the allegation, of course, is wrong. It is "hornbook law that § 1983 does not create a federal cause of action. It provides a remedy

for the vindication of other federal statutory or constitutional rights." *Carbonell v. Louisiana Dept. of Health & Human Resources*, 772 F.2d 185, 188 (5th Cir.1985).

use of legal procedure by individual members of Board of County Commissioners not federally cognizable under § 1983).

■ To the extent HAVEN's malicious prosecution claim is cognizable under § 1983, *see Wheeler v. Cosden Oil & Gas Chemical Co.*, 734 F.2d 254, 258, *modified,* 744 F.2d 1131 (5th Cir.1984), HAVEN cannot prevail because the Commissioners' lawsuit is civil, not criminal. *Howard Gault Co. v. Texas Rural Legal Aid, Inc.,* 615 F.Supp. 916, 938 (N.D.Tex.1985) (*Wheeler* holding that bad faith criminal prosecution violates federal right rests on protections afforded criminal defendants that do not extend to defendants in civil suits even if civil action brought by persons acting under color of state law).

■ The court also rejects HAVEN's abuse of legal process claim. HAVEN apparently contends that this civil action constitutes abuse of legal process because the Commissioners' actions are forbidden under the Civil Rights Act, the Commissioners knew or should have known that there is no known remedy or authority for the Commissioners' lawsuit, the lawsuit could not have been filed in good faith or with probable cause because the proper means for determining the sufficiency of the FEIS is by judicial review of the agency decision, and the allegations of the lawsuit "evidence the lack of proper authority and grounds."

■ The test as to whether there is an abuse of process is whether the process has been used to accomplish some end which is without the regular purview of the process, or which compels the party against whom it is used to do some collateral thing which he could not be legally and regularly compelled to do. *Brown v. Edwards*, 721 F.2d 1442, 1455 (5th Cir.1984). It may be that HAVEN can plead specific facts which, if proven, demonstrate that the Commissioners have used process in an unlawful manner. Thus far, however, HAVEN has not done so and has thus failed to state a claim.

*Count III*

■ In Count III HAVEN alleges that the Commissioners have conspired to deprive HAVEN's members of their constitutional right to free speech as protected by the "Fourth Amendment" of the U.S. Constitution. The Commissioners' lawsuit also attempts to deprive HAVEN, its members, and others, by restraining order, of "the right to sue or [sic] in future lawsuits" in violation of 42 U.S.C. § 1983.

Although this claim is difficult at best to grasp, and once understood borders precariously on frivolity, HAVEN apparently contends the Commissioners' lawsuit has deprived its members of their right to comment on the FEIS and to express freely their views regarding the proposed SH 190 route, and that the request for injunctive relief, if granted, would deprive HAVEN of its free speech right. HAVEN fails completely, however, to disclose how its speech has in any way been chilled or infringed by the Commissioners' actions. To the contrary, HAVEN has been able to criticize the Commissioners' position regarding SH 190, to comment on the FEIS, and to assail the filing of this civil action. No First Amendment deprivation has been demonstrated.[12]

### III.

### LEAVE TO REPLEAD AND RULE 11

Having determined that the counterclaim should be dismissed, the court must decide whether to grant HAVEN leave to replead.

The Fifth Circuit, in *Morrison v. City of Baton Rouge*, 761 F.2d 242 (5th Cir.1985), and again in two recent decisions, *Jacquez v. Procunier*, 801 F.2d 789, and *Brown v. Texas A & M University*, 804 F.2d 327, has resolved whether further leave to amend should be granted in an immunity case by ascertaining whether plaintiff has been afforded a fair opportunity in the district court to plead its best case. This court has

12. HAVEN's bald assertion that the Commissioners' lawsuit will somehow preclude HAVEN and its members "from the right to sue or [sic] in future lawsuits" is so vague as to preclude reasoned understanding and is not discussed further.

made such a determination here and has concluded that HAVEN should be given one more opportunity to replead.

Due to the vacancy in this court the sufficiency of HAVEN's counterclaim, which was filed March 27, 1984, is just now being decided. A number of apposite Supreme Court and Fifth Circuit cases, some of them discussed here, have been decided in the interim. Therefore, although it appears likely that HAVEN has made out its best case, with due deference to Rule 15(a) and the Supreme Court's teaching that leave be freely given to amend pleadings, the court grants HAVEN leave to amend.

In doing so, however, the court sounds a Rule 11 warning. Judge Brown, in *Elliott,* makes plain that one method for preventing meritless suits against public officials is rigid enforcement of Rule 11. 751 F.2d at 1480–1482. The court intends to do so vigilantly in this case.

 Rule 11 provides, in pertinent part:

> The signature of an attorney or party constitutes a certificate by him that he has read the pleading, motion, or other paper; that to the best of his knowledge, information, and belief formed after reasonable inquiry it is well grounded in fact and is warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law, and that it is not interposed for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation.

As amended, Rule 11 imposes upon attorneys an affirmative duty to conduct an investigation into whether the statements they are making to the court are supported in fact and in law. The absence of bad faith does not prevent a violation of the Rule. *Lyle v. Charlie Brown Flying Club, Inc.,* 112 F.R.D. 392, 397–398 (N.D. Ga.1986). Counsel's signature is an affirmation that counsel has made a reasonable inquiry into the viability of a pleading. Whether an attorney has complied with the requirements of Rule 11 is not determined by the apparent absence or presence of subjective good faith but rather by the objective reasonableness of his action. *Johnson v. Veterans Administration,* 107 F.R.D. 626, 628 (N.D.Miss.1985). Moreover, an attorney's sincere belief that the law warrants the position he has taken is insufficient to satisfy the mandate of Rule 11. *Lyle,* 112 F.R.D. at 398. Where a reasonable amount of research would have revealed to the attorney that there was no legal foundation for the position taken, Rule 11 sanctions will be imposed. *Rodgers v. Lincoln Towing Service,* 596 F.Supp. 13, 22 (N.D.Ill.1984), *aff'd,* 771 F.2d 194 (7th Cir.1985).

HAVEN's pleadings have already evinced unacceptable carelessness, some examples of which have been noted. It is, for example, inexcusable for a party to claim that the Fourth Amendment provides a free speech right or to allege a § 1985 claim without alleging that the actions complained of were motivated by a race or class-based animus.

With respect to the factual substance of HAVEN's claim, if the contentions of HAVEN's amended complaint have no basis in law or fact, the court will not hesitate to impose monetary sanctions upon HAVEN and/or its attorney. *See, e.g., Thompson v. Aland,* 639 F.Supp. 724, 731–32 (N.D. Tex.1986) (imposing sanctions for baseless 42 U.S.C. §§ 1981, 1982, 1983, "1984," and 1985 claims).

The court will give HAVEN until February 27, 1987 to file an amended counterclaim. If it fails to do so its counterclaim will be dismissed, with prejudice. If it files an amended counterclaim the court will evaluate it in response to a motion to dismiss or for summary judgment, through Rule 11–colored glasses.

## IV.

The Commissioners' motion to dismiss is GRANTED. HAVEN is granted leave to replead.

SO ORDERED.