The **ROYAL BANK OF CANADA**, Plaintiff,

v.

**FEDERAL DEPOSIT INSURANCE CORPORATION** as Receiver for First RepublicBank Fort Worth, N.A., Defendant.

**Civ. A. No. CA4–84–0161–D.**

United States District Court, N.D. Texas, Fort Worth Division.

March 22, 1990.

Jim K. Choate and John P. Lilly of Choate & Lilly, P.C., Dallas, Tex., for plaintiff The Royal Bank of Canada.

William Frank Carroll, John Mitchell Nevins, and Alyson Couch Dover of Baker, Mills & Glast, P.C., Dallas, Tex., for defendant Federal Deposit Ins. Corp. as Receiver for First RepublicBank Fort Worth, N.A.

FITZWATER, District Judge:

The instant motion to dismiss presents questions concerning the application of the *D'Oench, Duhme*[1] doctrine, and asks the court to decide whether the Federal Deposit Insurance Corporation ("FDIC") can be liable for punitive damages and attorney's fees.

I

Plaintiff The Royal Bank of Canada ("RBC") filed this action against a predecessor of First RepublicBank Fort Worth, N.A. ("RepublicBank")[2] in 1984, alleging claims for fraud, breach of fiduciary duty, and breach of contract. The lawsuit arises from RBC's purchase of a $10 million participation interest in a loan made by RepublicBank and others to Pengo Industries, Inc. ("Pengo"), an oil company. The initial loan arose from a December 4, 1981 bank credit agreement between RepublicBank, First National Bank of Chicago, and Continental Illinois National Bank. Under the bank credit agreement, each bank committed to lend Pengo up to $30 million. RepublicBank was named as the agent bank. Shortly thereafter, Pengo and the three banks amended the bank credit agreement so that each bank agreed to lend Pengo up to $40 million. RepublicBank could not finance the entire $40 million loan itself because banking regulations restricted the bank to loans no higher than $30 million. RepublicBank thus entered into a participation agreement with RBC evidenced by a one-page participation certificate. Pursuant to this certificate, RepublicBank assigned to RBC an "undivided participating interest" of $10 million in the $40 million Pengo note. According to the participation, RepublicBank could, at its option, request RBC to advance up to $10 million.

Between March 25 and April 28, 1982 RBC advanced $5.8 million on the Pengo note; shortly thereafter, RepublicBank repaid RBC the sum advanced. RepublicBank funded the $5.8 million repayment by selling participations in the Pengo loan to

---

1. *D'Oench, Duhme & Co. v. FDIC,* 315 U.S. 447, 62 S.Ct. 676, 86 L.Ed. 956 (1942).

2. For ease of reference, the court refers to RepublicBank and its predecessor institutions as "RepublicBank."

RepublicBank's various smaller correspondent banks. Due to a decline in oil prices, Pengo experienced financial difficulties in the spring of 1982. Pengo's debt-to-net worth ratio dropped below the level required in the original bank credit agreement, putting Pengo in default on the loans. RepublicBank and the two other signatory banks waived this default. On June 30, 1982 the three banks declined Pengo's request for an additional $6 million loan. On July 14, 1982 RepublicBank placed Pengo on its insolvent loan internal watch list. RBC alleges that in late 1982 RepublicBank requested and RBC agreed that RBC would advance $3–4 million to enable Pengo to purchase a letter of credit. This advance was not made. Instead, RepublicBank called on RBC to fund its entire $10 million obligation, which RBC did. RepublicBank did not apply RBC's $10 million payment towards Pengo's purchase of a letter of credit, but instead used the money to repay RepublicBank's smaller correspondent banks and take them out of the Pengo loan. Pengo's financial condition subsequently deteriorated further. This lawsuit followed.

In April 1988 the court granted RepublicBank's motion for summary judgment with respect to certain claims, specifying that other grounds for recovery against RepublicBank remain for trial.[3] On July 29, 1988 RepublicBank was declared insolvent and the FDIC appointed as its receiver. The FDIC thereafter filed a notice of substitution as a party and in November 1988 filed the instant motion to dismiss, contending the remaining claims asserted by RBC are barred by the *D'Oench, Duhme* doctrine. RBC filed its response, and then moved to reopen discovery and join NCNB Texas National Bank ("NCNB") as a defendant. The court determined that RBC should be permitted to conduct limited discovery and abated a determination of the motion to join NCNB pending completion of the discovery. Discovery issues were again presented when RBC filed its motion to

compel the FDIC to answer certain interrogatories pertaining to whether the FDIC had violated the *First Empire*[4] doctrine. The court denied RBC's motion to compel, specifically noting that RBC's concern with *First Empire* was premature because that doctrine applies only to proved or adjudicated, not contingent, claims. The court denied RBC's motion to reconsider this ruling, denied the parties' request for a pretrial conference, and granted RBC's motion to supplement its previously abated motion to join NCNB as a defendant. Later the court denied RBC's motion to join NCNB, concluding joinder was not proper because the FDIC–Receiver retained liability for all claims asserted by RBC herein. The court subsequently denied RBC's motion for certification of immediate appeal of the order.

The court now reaches the FDIC's motion to dismiss. In its original and supplemental responses, RBC contends its claims are not precluded by application of 12 U.S.C. § 1823(e) or the *D'Oench, Duhme* doctrine. The FDIC argues that each of RBC's theories of recovery fails as a matter of law.

## II

The FDIC's motion to dismiss should be denied unless it appears beyond doubt that RBC can prove no set of facts in support of its claims that would entitle it to relief. *Collin County, Tex. v. Homeowners Ass'n for Values Essential to Neighborhoods (HAVEN)*, 654 F.Supp. 943, 948 (N.D.Tex. 1987) (citing *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–02, 2 L.Ed.2d 80 (1957)). The court accepts as true the allegations of RBC's complaint and views them in the light most favorable to plaintiff for purposes of deciding the motion to dismiss. *Bell & Murphy and Assocs., Inc. v. InterFirst Bank Gateway, N.A.*, 894 F.2d 750, 752 n. 1 (5th Cir.1990).

## A

The court first considers whether the claims asserted by RBC that are dependent

---

**3.** See *Royal Bank of Canada v. InterFirst Bank Fort Worth, N.A.*, No. CA4–84–0161–D (N.D.Tex. April 4, 1988).

**4.** *First Empire Bank–New York v. FDIC*, 572 F.2d 1361 (9th Cir.), *cert. denied*, 439 U.S. 919, 99 S.Ct. 293, 58 L.Ed.2d 265 (1978).

upon the existence of alleged oral agreements state valid theories of recovery against the FDIC. RBC contends RepublicBank fraudulently induced RBC to enter into the loan participation agreement by orally agreeing that RBC's commitment would be on a last-in, first-out basis; that is, RBC would be required to fund money only after RepublicBank funded its much larger interest in the Pengo loan and RBC would then have first priority on any Pengo note payments. RBC additionally asserts that RepublicBank breached oral agreements entitling RBC to the benefits of the bank credit agreement and reducing the amount of the Pengo loan that RBC would be required to fund. The FDIC contends these claims are barred by *D'Oench, Duhme* because they owe their existence to undocumented side agreements. RBC offers three responses: (1) the FDIC relies on cases construing 12 U.S.C. § 1823(e) that are not relevant to a *D'Oench, Duhme* case; (2) *D'Oench, Duhme* and its progeny are inapplicable to cases such as this where the claimant is not a borrower seeking to avoid obligations on an asset held by the FDIC; and (3) the FDIC's knowledge of RBC's claims prior to the FDIC's appointment as receiver precludes application of *D'Oench, Duhme*.[5] The court considers each contention in turn.

1

■ RBC's contention that § 1823(e) [6] jurisprudence is inapposite for purposes of deciding a common law *D'Oench, Duhme* question is easily rejected. A comparison of the common law and statutory lines of cases indicates they are construed *pari rationae*. *See Olney Sav. & Loan Ass'n v. Trinity Banc Sav. Ass'n*, 885 F.2d 266, 274 (5th Cir.1989) ("As the aims of § 1823(e) and *D'Oench* are identical and § 1823(e) is a codification of *D'Oench* and its progeny, the reasoning applied in § 1823(e) cases is applicable to *D'Oench* cases"); *Beighley v. FDIC*, 868 F.2d 776, 784 (5th Cir.1989) (*D'Oench, Duhme* doctrine and § 1823(e) often considered in tandem); *FSLIC v. Lafayette Inv. Properties, Inc.*, 855 F.2d 196, 198 n. 1 (5th Cir.1988) (interpretation of § 1823(e) is relevant to common law *D'Oench* questions); *FSLIC v. Murray*, 853 F.2d 1251, 1255 (5th Cir.1988) (applying § 1823(e) analysis to *D'Oench* case). Given the parallel missions of § 1823(e) and the *D'Oench, Duhme* doctrine, *Olney*, 885 F.2d at 274, RBC's contention that case law construing § 1823(e) is irrelevant to application of *D'Oench, Duhme* is without merit. Both the statute and the common law doctrine further the same goal: protecting the FDIC from undocumented agreements that impede the FDIC's ability to perform its statutorily mandated functions. Neither the Fifth Circuit[7] nor any other court

5. In response to the FDIC's original motion to dismiss, RBC also asserted that the FDIC had no standing to defend this action because NCNB assumed liability for RBC's claims, the purchase and assumption agreement between the FDIC and NCNB violated the *First Empire* doctrine, and NCNB as the FDIC's successor was not entitled to the protections of the *D'Oench, Duhme* rule of estoppel. The court's prior rulings have resolved the first two contentions and rendered consideration of the third unnecessary. In its January 2, 1990 supplemental response, RBC argues that the Financial Institutions Reform, Recovery, and Enforcement Act of 1989 ("FIRREA"), Pub.L. No. 101–73, 1989 U.S.Code Cong. & Admin.News (103 Stat.) 183, does not apply retroactively and is thus inapplicable to this case. Because the court concludes the result reached in today's ruling is the same whether pre-FIRREA law or post-FIRREA law is applied, the court need not resolve this question.

6. 12 U.S.C. § 1823(e), as it existed prior to FIRREA, provided:

No agreement which tends to diminish or defeat the right, title or interest of the [FDIC] in any asset acquired by it under this section, either as security for a loan or by purchase, shall be valid against the [FDIC] unless such agreement (1) shall be in writing, (2) shall have been executed by the bank and the person or persons claiming an adverse interest thereunder, including the obligor, contemporaneously with the acquisition of the asset by the bank, (3) shall have been approved by the board of directors of the bank or its loan committee, which approval shall be reflected in the minutes of said board or committee, and (4) shall have been, continuously, from the time of its execution, an official record of the bank.

7. Fifth Circuit authority construing the *D'Oench, Duhme* doctrine in its common law form is relatively sparse because the majority of reported cases involve the FDIC in its corporate capacity, to which, pre-FIRREA, only the codified version of *D'Oench, Duhme*—12 U.S.C.

of appeals has adopted RBC's position that § 1823(e) creates more exacting requirements than does *D'Oench, Duhme.* Nor has any circuit apparently adopted the proposition that § 1823(e) cases are irrelevant in understanding and applying the common law doctrine.

### 2

■ Equally unavailing is RBC's argument that *D'Oench, Duhme* and its progeny are inapplicable because the FDIC, in its capacity as receiver, holds no asset of RepublicBank upon which it seeks to collect from RBC. According to RBC, the "defaulting borrower cases" and federal holder in due course cases [8] do not apply where, as here, the FDIC is not suing or defending against the original borrower but against a third party. RBC further asserts that the rationale supporting *D'Oench, Duhme* is absent because recovery by RBC will not diminish funds available for distribution.

■ The court today rejects a somewhat analogous argument in *Fair v. NCNB Tex. Nat'l Bank,* 733 F.Supp. 1099, 1104 (N.D. Tex.1990). In *Fair* the court follows Fifth Circuit authority that "makes pellucid that the *D'Oench, Duhme* rule is applicable regardless whether a failed institution intends by its conduct primarily to induce execution of a note or to incline participation in some other venture." *Id.* at 1103. Although *Fair* involves a suit by borrowers, it applies *D'Oench, Duhme* to the borrowers suing as purchasers of property from a failed bank. It is entirely consonant with the Fifth Circuit's interpretation of *D'Oench, Duhme* to apply the rule outside the lender-borrower framework, so long as the party seeking to recover must rely upon a scheme or arrangement likely to mislead bank examiners. In the particular context of participation agreements, a party joins in such an arrangement by failing to get the insolvent bank's representations in writing.[9] RBC's

§ 1823(e)—applied. *See, e.g., FDIC v. Texarkana Nat'l Bank,* 874 F.2d 264, 267–68 (5th Cir. 1989) (12 U.S.C. § 1823(e) barred assertion of unrecorded representations as defense to liability on participation agreements), *cert. denied,* U.S. ——, 110 S.Ct. 837, 107 L.Ed.2d 833 (1990); *FDIC v. Cardinal Oil Well Serv. Co.,* 837 F.2d 1369, 1372 (5th Cir.1988) (§ 1823(e) barred assertion of representation that guarantee would cover only interim loan); *FDIC v. Langley,* 792 F.2d 541, 546 (5th Cir.1986) (§ 1823(e) barred defense that bank misrepresented the acreage of property), *aff'd,* 484 U.S. 86, 108 S.Ct. 396, 98 L.Ed.2d 340 (1988); *FDIC v. Castle,* 781 F.2d 1101, 1108 (5th Cir.1986) (§ 1823(e) barred claim that guaranty forms were not completed according to oral agreement); *FDIC v. Lattimore Land Corp.,* 656 F.2d 139, 142 (5th Cir. Unit B 1981) (§ 1823 barred assertion that lender agreed to provide further financing); *Chatham Ventures, Inc. v. FDIC,* 651 F.2d 355, 362 (5th Cir. Unit B 1981) (§ 1823(e) barred assertion of breach of oral joint venture agreement by bank as a defense to liability), *cert. denied,* 456 U.S. 972, 102 S.Ct. 2234, 72 L.Ed.2d 845 (1982); *FDIC v. Hoover–Morris Enter.,* 642 F.2d 785, 787–788 (5th Cir. Unit B 1981) (§ 1823(e) prevented borrower from asserting oral agreement that deficiency judgment would not be sought); *Black v. FDIC,* 640 F.2d 699, 701 (5th Cir. Unit B) (§ 1823(e) barred unwritten agreements to make additional financing available and to disregard late payments), *cert. denied,* 454 U.S. 838, 102 S.Ct. 143, 70 L.Ed.2d 119 (1981). A comparison of the *D'Oench, Duhme* and § 1823(e) lines

of cases, however, reveals they are jurisprudentially similar.

8. The federal holder in due course doctrine is not implicated in today's ruling.

9. The Fifth Circuit is not alone in this analysis. In *FDIC v. State Bank of Virden,* 893 F.2d 139 (7th Cir.1990), the Seventh Circuit recently held that a bank-purchaser of a participation agreement could not assert the alleged misrepresentations of the selling bank to support a claim of set off. *Id.* at 143, 144. The court rejected the bank's arguments that § 1823(e) did not apply to a cause of action sounding in tort or to situations where the action was not based on an underlying note obligation, recognizing that "[w]hen the failure to put in writing what was said orally is the gravamen of the objection to the bank's conduct, it comes within both letter and spirit of § 1823(e)." *Id.* at 144. As previously discussed, the same analysis is relevant to application of *D'Oench, Duhme.*

Similarly, in *First State Bank of Wayne County, Ky. v. City and County Bank of Knox County, Tenn.,* 872 F.2d 707 (6th Cir.1989), the Sixth Circuit affirmed a judgment of the district court dismissing a bank's claims against the FDIC as receiver. The bank alleged a failed bank had breached an oral agreement to repurchase certain loans and loan participations. Noting that the alleged oral agreement was in contradiction of the failed bank's records, the court held enforcement of the agreement was barred by *D'Oench, Duhme. Id.* at 717.

arguments regarding the inapplicability of *D'Oench, Duhme* to the present case must fail.

### 3

■ RBC also posits that the FDIC's prior knowledge of RBC's claims precludes application of *D'Oench, Duhme.* This proposition is uniformly rejected, whether the question is knowledge as it applies to § 1823(e) or to *D'Oench, Duhme. See, e.g., Langley v. FDIC*, 484 U.S. 86, 93–95, 108 S.Ct. 396, 403, 98 L.Ed.2d 340 (1987) (FDIC's knowledge of misrepresentation prior to time it acquires asset irrelevant to application of § 1823(e)); *FDIC v. Kratz*, 898 F.2d 669, 671 (8th Cir.1990) (FDIC's knowledge not relevant to application of § 1823(e)); *First State Bank*, 872 F.2d at 717 (FDIC's knowledge of existence of oral agreement irrelevant to agreement's enforceability). As the Sixth Circuit recently explained, "[t]he protection afforded by the *D'Oench* estoppel doctrine would be of no value if the parties could avoid its effect by making the FDIC aware of a secret agreement before a bank failure." *First State Bank of Wayne County, Ky. v. City and County Bank of Knox County, Tenn.*, 872 F.2d 707, 717 (6th Cir.1989). RBC cites no authority to support the argument that the FDIC's knowledge precludes application of *D'Oench, Duhme,* instead relying on a strained equtiable analysis, which reasoning also fails. That RBC may not have intended to deceive banking authorities, or that RepublicBank itself may have engaged in culpable conduct, does not defeat application of *D'Oench, Duhme. See Bell & Murphy*, 894 F.2d at 754; *First State Bank*, 872 F.2d at 717, 718; *Beighley*, 868 F.2d at 784. The relevant test is simply whether the party "lent himself to a scheme or arrangement whereby ... [banking] authorities were likely to be misled." *Bell & Murphy*, 894 F.2d at 753, 754; *Beighley*, 868 F.2d at 784; *Fair*, 733 F.Supp. at 1104.

The Fifth Circuit teaches that oral representations allegedly made by a failed institution to induce a bank to enter into a participation agreement fall within the ambit of *D'Oench, Duhme. See FDIC v. Texarkana Nat'l Bank*, 874 F.2d 264, 268 (5th Cir.1989), *cert. denied,* —— U.S. ——, 110 S.Ct. 837, 107 L.Ed.2d 833 (1990). Thus RBC's allegation that RepublicBank fraudulently represented the order of payments relevant to the loan participation agreement is within the rule of estoppel. RBC's claims that RepublicBank breached an oral agreement regarding the bank credit agreement and an oral agreement regarding funding of the Pengo loan similarly are within the *D'Oench, Duhme* rule. RBC failed to ensure that these alleged representations were reduced to writing and placed in the bank's files. It thereby lent itself to a scheme or arrangement likely to mislead the FDIC. *See Bell & Murphy*, 894 F.2d at 754. RBC's claims for relief that are predicated upon the existence of alleged oral agreements must therefore be dismissed.

### B

■ The court next turns to the question whether the breach of contract claims that RBC predicates upon language contained in the participation agreement are actionable.

■ The participation agreement provides that RepublicBank "shall exercise the same care that [RepublicBank] exercise[s] in the making and handling of loans for our own [RepublicBank's] account."[10] RBC contends this contractual provision imposed a duty upon RepublicBank to exercise the same care in the management of RBC's funds as RepublicBank exercised with its own funds. In its earlier ruling on RepublicBank's summary judgment motion, the court held that a reasonable jury could find that RepublicBank's alleged actions violated this contractual duty, and thus denied summary judgment as to this claim.[11] The

---

10. The participation certificate was incorporated into RBC's original pleadings and may thus be considered on motion to dismiss.

11. The court reserved for decision the question whether the relationship between RBC and RepublicBank gave rise to an implied duty of good faith and fair dealing under Texas law. The

FDIC now moves to dismiss the breach of contract claims that RBC bottoms on the language of the participation agreement, asserting the claims fail under *D'Oench, Duhme* and/or state law.[12]

RBC contends RepublicBank failed to exercise the same care with RBC's funds as it did with RepublicBank's funds by: (1) misapplying RBC's $10 million advance under the participation agreement; (2) failing to inform RBC of Pengo's deteriorating financial condition and loan default and RepublicBank's waiver of that default; (3) failing to inform RBC that Pengo's loan was fully funded; (4) failing to provide RBC with Pengo's current financial information; and (5) bringing RBC back into the Pengo loan despite Pengo's deteriorating financial condition. The FDIC asserts that each of these allegations represents a separate contractual duty, and contends claims based on these duties are barred by *D'Oench, Duhme* because they were not evidenced in RepublicBank's records.

The court rejects this application of *D'Oench, Duhme* and interpretation of the contractual language. First, RBC's claims do not depend upon the existence of several contractual duties. The duty here is singular: RepublicBank agreed to exercise the same care with RBC's funds as it did with its own. Second, RBC does not rely upon side agreements that are not contained in the pertinent bank files to support its claims. The entirety of the agreement is contained in the participation certificate; hence, proof of the agreement does not require resort to oral representations.[13] That proof of the breach of the agreement may require resort to evidence not contained in RepublicBank's files does not bring the rule of estoppel into play. *D'Oench, Duhme* cannot reasonably be understood to require that evidence of the breach of an agreement be contained in a bank's file. It is instead the undisclosed existence of the agreement and its terms that is held to mislead bank examiners. RBC predicates its claims upon the written participation agreement found in RepublicBank's files. Because the contractual duty was reduced to written terms and was at all pertinent times in the relevant files, the court discerns no basis for applying *D'Oench, Duhme.*[14] RBC's contract claims remain for trial.

court has since held that no such duty arises in the context of conducting a foreclosure sale. *FSLIC v. Atkinson–Smith Univ. Park Joint Venture,* 729 F.Supp. 1130, 1133 (N.D.Tex.1989) Judge Fish of this court has held that a bank does not owe an implied duty of good faith and fair dealing under Texas law to guarantors of a promissory note. *FSLIC v. Wilson,* 722 F.Supp. 306, 311 (N.D.Tex.), *appeal docketed,* No. 89–1964 (5th Cir.1989). The court extends the reasoning of *Atkinson–Smith* and *Wilson* and holds today that RBC's implied duty claim must likewise be rejected in the present case.

12. The FDIC does not adequately support the contention that RBC's claims are meritless under state law.

13. Both RBC and the FDIC have placed great emphasis, albeit from different perspectives, on the "bilateral obligation" exception to *D'Oench, Duhme* recognized in *Howell v. Continental Credit Corp.,* 655 F.2d 743 (7th Cir.1981) (cited with approval in *FDIC v. McClanahan,* 795 F.2d 512, 515 (5th Cir.1986)). In *Howell* the Seventh Circuit determined that *D'Oench, Duhme* was inapplicable where "the document the FDIC seeks to enforce is one ... which facially manifests bilateral obligations and serves as the basis of the lessee's defense." 655 F.2d at 746. In *FDIC v. O'Neil,* 809 F.2d 350 (7th Cir.1987), the

Seventh Circuit refined the *Howell* analysis, recognizing that the rule applied only where the obligation sought to be enforced against the FDIC appeared in the "asset itself rather than in an agreement merely referred to in the asset." *Id.* at 354. Similarly, the Fifth Circuit has recently recognized *Howell* as a "narrow exception," and has refused to apply that exception where the agreement sought to be enforced is unrecorded. *Bell & Murphy,* 894 F.2d at 754.

To the extent *D'Oench, Duhme* is at all applicable to RBC's remaining contract claims, the court is persuaded that the exception recognized in *Howell* is controlling. The obligation at issue appears on the face of the participation certification. There is no suggestion that proof of the existence and terms of the agreement will require resort to undocumented representations. While there is some question about the meaning of the contractual language, this provides no basis for application of *D'Oench, Duhme. See O'Neil,* 809 F.2d at 354 (written obligation does not become unwritten because of question about its meaning).

14. This is to be distinguished, however, from the facts of *Fair.* In *Fair* the loan file contained an appraisal and plans and specifications but no document setting out the bank's representation that property to be sold by the bank would

### C

The court finally considers the FDIC's contention that RBC's claims for attorney's fees and punitive damages must be dismissed because neither is recoverable against the FDIC.

■ Absent congressional authorization, punitive damages may not be awarded against the FDIC. *Commerce Fed. Sav. Bank v. FDIC*, 872 F.2d 1240, 1248 (6th Cir.1989); *cf. Olney*, 885 F.2d at 273, 274.[15] This rule is grounded on the "long-established principle" that an agency or instrumentality of the United States is immune from punitive damage awards. *Commerce*, 872 F.2d at 1248 (citations omitted). Because no congressional authorization exists for an assessment of such damages against the FDIC, RBC's claim for punitive damages is dismissed.

■ A claim for attorney's fees may be asserted against the assets of a failed bank only where such fees are specified in the parties' contract or where there is a collateral fund from which they can be recovered. *InterFirst Bank Abilene, N.A. v. FDIC*, 777 F.2d 1092, 1097 (5th Cir.1985). The participation agreement between RBC and RepublicBank did not provide for the recovery of attorney's fees, and no collateral fund from which they can be recovered exists. The court therefore concludes RBC may not assert its claim for attorney's fees against RepublicBank assets now held by the FDIC as receiver.

Attorney's fees are, however, potentially recoverable against the FDIC pursuant to the Equal Access to Justice Act, 28 U.S.C. § 2412(d)(1)(A). The court therefore declines to dismiss RBC's claim for attorney's fees.

The FDIC's motion to dismiss is granted in part and denied in part.

SO ORDERED.

---

conform with these documents. 733 F.Supp. at 1105. In order to recover on their claims, the borrowers in *Fair* would have been required to prove the existence of an undocumented oral agreement between the borrowers and First Republic. No such proof is necessary in the present case. The participation agreement expressly imposed upon RepublicBank a contractual duty of care that should reasonably have put the FDIC upon notice of potential allegations that the obligation had been breached.

**15.** In *Olney* the Fifth Circuit recognized the general rule that agencies of the United States can-

not be held liable for punitive damages absent congressional authorization. 885 F.2d at 273. In *Olney*, however, the punitive damage award was assessed against the failed institution *prior* to the FSLIC's appointment as receiver. Thus the court reasoned that the award was assessed against the institution, not the FSLIC, and therefore did not fall under the "umbrella of sovereign immunity." *Id.* at 274. Here, any punitive damage award would be assessed against the FDIC as receiver. The teaching of *Olney* is therefore inapplicable.