**J.C. SHULER and Mary A. Shuler, Plaintiffs,**

v.

**RESOLUTION TRUST CORPORATION, as Receiver for Unifirst Bank for Savings, F.A., Jackson, Mississippi, and Resolution Trust Corporation, as Receiver for Unifirst Bank for Savings, a Federal Savings and Loan Association, Jackson, Mississippi, Defendants.**

Civ. A. No. J89–0640(B).

United States District Court, S.D. Mississippi, Jackson Division.

Feb. 28, 1991.

E. Michael Marks Jackson, Miss., for plaintiffs.

Paul H. Stephenson, III, Watkins and Eager, Jackson, Miss., for defendants.

## MEMORANDUM OPINION AND ORDER

BARBOUR, District Judge.

This cause is before the Court on the Motion of Defendants Resolution Trust Corporation, as Receiver for Unifirst Bank for Savings, F.A., Jackson, Mississippi, and Resolution Trust Corporation, as Receiver for Unifirst Bank for Savings, a Federal Savings and Loan Association, Jackson, Mississippi, for Summary Judgment. Having considered the Motion together with supporting and opposing memoranda and documents, the Court is of the opinion that the Motion is well taken and hereby grants the Motion of Defendants for Summary Judgment for the reasons as set forth below.

### I. FACTUAL HISTORY

On December 16, 1986, Plaintiffs J.C. Shuler and Mary A. Shuler purchased from Unifirst Bank for Savings, F.A. ("Unifirst"), a dwelling located at 1734 Wood Glen Drive, Jackson, Mississippi. Prior to the closing of such sale on December 16, 1986, Plaintiffs physically inspected the subject premises on several occasions. Plaintiffs also discussed the condition of the premises and terms of the proposed sale on a number of occasions with their real estate agent, Tanja Adams, and a Unifirst representative, Jill Fair. The dwelling had a history of foundation problems. Upon physical inspection of the dwelling prior to execution of the contract of sale, Plaintiff Mary Shuler noticed cracks in the master bedroom and the living room. Plaintiff J.C. Shuler noticed a slope in the floor and saw signs of shifting in the carport area. Both Plaintiffs also observed holes on the back side of the house related to foundation work. Mary Shuler was told by Jill Fair that the dwelling would not qualify for FHA financing because the FHA would not approve the foundation.

This physical evidence of prior foundation problems raised questions in Plaintiffs' minds about the condition of the foundation. Plaintiffs allege that these questions were resolved by Fair's oral statements, directly and through Adams, that the foundation had been "fixed." Mary Shuler states that Unifirst "guaranteed" the foundation through oral statements of Fair. Mrs. Shuler claims that Fair said the foundation was "99 and 44/100ths % fixed." After noticing the cracks in the house and holes in the backyard, Plaintiffs considered retaining a structural engineer to inspect the foundation. Plaintiffs, however, did not retain an engineer because of the cost and their contention that Fair had orally represented to them that the foundation had been "fixed." Rather than incur such engineer costs, Plaintiffs elected to rely upon the alleged representations of Unifirst.

Plaintiffs did not ask Unifirst for or receive a written guaranty or certification of the foundation. Plaintiffs have no documents which evidence their contention that Unifirst "guaranteed" or otherwise provided affirmative assurances of the continued suitability of the foundation. There is no written agreement or document executed by Unifirst evidencing any Unifirst guarantee or assurance of the suitability of the dwelling foundation. However, for purpose of this Motion for Summary Judgment, the Court assumes, without finding, that the Unifirst representative orally "guaranteed" or warranted the foundation.

Plaintiffs moved into their new home in December 1986. Within approximately six months after the sale, Mary Shuler noticed the cracks present in the bedroom and living room at the time of the sale were

growing wider. She contacted different foundation contractors to obtain appraisals of the costs of repair. Mrs. Shuler contacted a credit union in an attempt to borrow funds to repair the foundation but was unable to do so.

## II. PROCEDURAL HISTORY

On March 22, 1989, Plaintiffs filed this action against Unifirst in the Circuit Court of the First Judicial District of Hinds County, Mississippi. Plaintiffs allege that Unifirst misrepresented the defective condition of the foundation at the time of sale, orally misrepresented that the foundation had been fixed, and orally guaranteed its condition. The Complaint alleges no breach of any written agreement. Plaintiffs seek compensatory and punitive damages and rescission of the contract of sale.

Following commencement of this action, the Office of Thrift Supervision placed Unifirst into receivership and appointed the Resolution Trust Corporation ("RTC") as the receiver on August 10, 1989. On the same day, the RTC organized Unifirst Bank for Savings, a Federal Savings and Loan Association, Jackson, Mississippi ("New Unifirst"), to take over such assets of the RTC as receiver for Unifirst as the RTC determined to be appropriate. The RTC, as receiver for Unifirst, and New Unifirst entered into a Purchase and Assumption Agreement on August 10, 1989, whereby New Unifirst assumed certain liabilities of the receivership estate and the RTC, as receiver for Unifirst, transferred to New Unifirst certain assets of the receivership estate. New Unifirst did not assume any alleged liability for monetary damages for alleged Unifirst misrepresentations associated with sale of the real property which is the subject of this proceeding. Therefore, the RTC as receiver for Unifirst is Defendant in this proceeding to the extent Plaintiffs seek monetary damages for alleged Unifirst misrepresentations. Among the assets transferred to New Unifirst were the promissory note and deed of trust executed by J.C. Shuler and Mary A. Shuler in conjunction with the sale of the real property at issue and which sale Plaintiffs now seek to rescind.

Pursuant to order properly entered by the Circuit Court of the First Judicial District of Hinds County, Mississippi, the RTC as receiver for Unifirst and the RTC as conservator for New Unifirst (later, the RTC as receiver for New Unifirst) were properly substituted as parties Defendant in this action. Following the substitution of the parties, the RTC properly removed the action to this Court on November 8, 1989. On October 15, 1990, Defendants filed the instant Motion for Summary Judgment based on the *D'Oench, Duhme* doctrine and 12 U.S.C. § 1823(e). Defendants argue that the alleged oral misrepresentations constitute an unwritten agreement falling within the protective ambit of the *D'Oench, Duhme* doctrine such that Plaintiffs are precluded from pursuing their claims against Defendants.

## III. ANALYSIS

### A. STANDARD OF REVIEW

Rule 56(c) of the Federal Rules of Civil Procedure states in relevant part that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." The United States Supreme Court has held that this language "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). Moreover, the party moving for summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genu-

ine issue of material fact." *Id.* at 323, 106 S.Ct. at 2552. The motion for summary judgment will be granted if the defendant raises a legally sufficient defense to bar the plaintiff's claim and no triable issue of fact relates to that defense. *See Castleglen, Inc. v. Commonwealth Savings Association*, 728 F.Supp. 656, 662 (D.Utah 1989).

## B. MOTION OF DEFENDANTS FOR SUMMARY JUDGMENT

In their Motion for Summary Judgment, Defendants assert that allegations of oral misrepresentations and oral agreements of a failed financial institution are not actionable against the RTC in its representative capacities. Plaintiffs' action is predicated upon alleged oral misrepresentations and acts of fraudulent inducement by the seller. The seller, Unifirst, is a failed financial institution. It has been placed into receivership and a second institution, New Unifirst, has been formed. The RTC is now Defendant in two distinct capacities, as receiver for Unifirst and as receiver for New Unifirst. Defendants argue that this action is barred by 12 U.S.C. § 1823(e) and the federal common law protections afforded the RTC under *D'Oench, Duhme & Co. v. Federal Deposit Insurance Corp.*, 315 U.S. 447, 62 S.Ct. 676, 86 L.Ed. 956 (1942), and its progeny. The salient issue presented by this Motion for Summary Judgment is whether the *D'Oench, Duhme* doctrine and Section 1823(e) are applicable to Plaintiffs' claims and thus function as a matter of law to protect Defendant RTC in its capacities as receiver from Plaintiffs' claims.

It is established law that a claimant may not prevail against the Federal Deposit Insurance Corporation ("FDIC") based on allegations of unwritten agreements or representations under the *D'Oench, Duhme* doctrine. The *D'Oench, Duhme* doctrine originally stated that, when a federally insured bank fails, borrowers from the bank may not later defend against collection efforts of a federal receiver by arguing that they had an unrecorded agreement with the bank. *D'Oench, Duhme & Co. v. FDIC*, 315 U.S. 447, 459-60, 62 S.Ct. 676,

680-81, 86 L.Ed. 956 (1942). In *D'Oench, Duhme* the FDIC brought an action to enforce a promissory note against its makers, but the defendants asserted that there was a secret agreement that no demand for payment would ever be made on the note. The Supreme Court of the United States held that a federal policy protects "[the FDIC] and public funds which it administers against misrepresentations as to the securities or other assets in the portfolios of the banks which [it] insures or to which [it] makes loans." *Id.* at 457, 62 S.Ct. at 679. The Court further held that where a debtor lends himself to a scheme such as a side agreement that would tend to mislead bank examiners he cannot thereafter raise the scheme as a defense against the FDIC on the note. The Court stated this rule applied even if the examiners may not have been deceived because it is the " 'evil tendency' of the acts to contravene the policy governing banking transactions which lies at the root of the rule." *Id.* at 459, 62 S.Ct. at 680.

Such federal common law protections provided under the *D'Oench, Duhme* doctrine have been codified at 12 U.S.C. § 1823(e). This statute provides as follows:

No agreement which tends to diminish or defeat the interest of the Corporation in any asset acquired by it under this section or section 1821 of this title, either as security for a loan or by purchase or as receiver of any insured depository institution, shall be valid against the Corporation unless such agreement—

(1) is in writing,

(2) was executed by the depository institution and any person claiming an adverse interest thereunder, including the obligor, contemporaneously with the acquisition of the asset by the depository institution,

(3) was approved by the board of directors of the depository institution or its loan committee, which approval shall be reflected in the minutes of said board or committee, and

(4) has been, continuously, from the time of its execution, an official record of the depository institution.

Plaintiffs argue that their cause of action is not barred by the *D'Oench, Duhme* doctrine or by 12 U.S.C. § 1823(e) because, they assert, factors essential to the application of the doctrine and the statute are missing. First, Plaintiffs argue, the "agreement" asserted by the RTC is in fact a unilateral misrepresentation made by agents of Unifirst. Plaintiffs contend that they never agreed to Unifirst's misrepresentation of the foundation repair work done on their home. The Shulers claim that they never lent themselves to any arrangement whereby banking authorities were likely to be misled. Second, Plaintiffs claim, because the Shulers filed their lawsuit against Unifirst many months prior to the takeover of Unifirst by the RTC, the RTC had actual knowledge of the misrepresentations made by agents of Unifirst and were not misled by any alleged scheme. The RTC had actual notice of the alleged misrepresentations made by agents of Unifirst and should thus be estopped from asserting the *D'Oench, Duhme* doctrine and Section 1823(e) as a bar to litigation. Third, Plaintiffs assert that Defendants have presented "no evidence that the alleged agreement made by the Shulers would diminish or defeat the interest of the RTC in any asset acquired by it." Thus, Plaintiffs' argument continues, Defendants have no evidence to support an essential element of their defense and their Motion for Summary Judgment must fail.

The Court is of the opinion that *D'Oench, Duhme* is applicable to the Shulers' claims because cases subsequent to *D'Oench, Duhme* make clear that the barring effect of the doctrine has been expanded beyond its original scope to preclude the instant cause of action against the RTC in its capacities as receiver. The Court acknowledges that "the doctrine has evolved to a rule that today is expansive and perhaps startling in its severity." *Bowen v. FDIC*, 915 F.2d 1013, 1015 (5th Cir.1990). The Court cannot, however, deny its applicability in light of recent case history. Furthermore, the Court is of the opinion that Plaintiffs' claims are precluded by application of 12 U.S.C. § 1823(e). The Court will address each of Plaintiffs' arguments in turn.

Plaintiffs' assertion that there exists no "agreement" within the contemplation of Section 1823(e) is incorrect in the face of the United States Supreme Court's decision in *Langley v. FDIC*, 484 U.S. 86, 108 S.Ct. 396, 98 L.Ed.2d 340 (1987). The Court in *Langley* specifically addressed whether a debtor's defense of bank misrepresentation of existing facts constituted reliance upon an unwritten "agreement" barred by Section 1823(e). *Id.* at 88, 108 S.Ct. at 399. The debtors in that case asserted that defenses of oral bank misrepresentations as to the number of surface acres, number of mineral acres, and existence of outstanding mineral leases regarding the land to be purchased were not barred by the statute.

The Court rejected the debtors' contention that "agreement" as used in Section 1823(e) "encompass[ed] only an express promise to perform an act in the future." *Id.* at 90, 108 S.Ct. at 400. The Court relied on *D'Oench, Duhme* to interpret Section 1823(e), concluding that "one who signs a facially unqualified note subject to an unwritten and unrecorded condition upon its repayment has lent himself to a scheme or arrangement that is likely to mislead the banking authorities, whether the condition consists of performance of a counterpromise (as in *D'Oench, Duhme*) or of *the truthfulness of a warranted fact*." *Id.* 484 U.S. at 93, 108 S.Ct. at 402 (emphasis added).

The facts in the instant case are similar to those in *Langley*. As the plaintiffs in *Langley*, Plaintiffs herein contend the bank procured the real estate sale and promissory note by oral misrepresentations regarding the condition of the premises at the time of the sale. The Court reaches a conclusion similar to that reached in *Langley*: a misrepresentation concerning an existing fact constitutes an agreement as contemplated by Section 1823(e). The Fifth Circuit recently commented on the broadness of the scope of "agreement" for purposes of *D'Oench, Duhme* analysis. "It is

not the nature or enforceability of an agreement between a bank and borrower that controls the application of the *D'Oench, Duhme* doctrine; if the agreement is unwritten, *D'Oench, Duhme* applies." *Kilpatrick v. Riddle*, 907 F.2d 1523, 1529 (5th Cir.1990). The *Kilpatrick* court so depicted the issue in *Langley:*

> [The Langleys] argued that the statute bars only defenses based on an unrecorded "agreement," and an agreement obviously requires *mutual consent.* Their defense, by contrast, alleged an unrecorded misrepresentation by the defrauding bank. *Unilateral misrepresentation*, their argument urged, is not an "agreement," and thus is not barred by the *D'Oench, Duhme* doctrine.

*Id.* at 1527 (emphasis added). As *Langley, Kilpatrick* clearly rejects the plaintiffs' assertion that "mutual consent" is required for an agreement under *D'Oench, Duhme. See also FSLIC v. Lafayette Investment Properties, Inc.*, 855 F.2d 196 (5th Cir. 1988) (the *D'Oench, Duhme* doctrine, as further defined in *Langley*, applies to alleged bank oral misrepresentations). The Fifth Circuit stated in another recent case that "transactions not reflected on the bank's books do not appear on the judicial radar screen either." *Bowen*, 915 F.2d at 1016. The Court observes that debtors can protect themselves by ensuring that any oral representations—agreements—are reflected in the loan documents which are part of a financial institution's records. *See Bell & Murphy and Associates, Inc. v. Interfirst Bank Gateway*, 894 F.2d 750, 754 (5th Cir.1990); *Fair v. NCNB Texas National Bank*, 733 F.Supp. 1099, 1103 (N.D.Tex.1990).

The Court notes that the procedural posture in *Langley* was different from that in the instant case. The ultimate issue in *Langley* concerned the assertion of defenses against the FDIC in its corporate capacity and the applicability of Section 1823(e). The RTC was not a party in *Langley*, but the Financial Institutions Reform, Recovery, and Enforcement Act of 1989 ("FIRREA"), 12 U.S.C. § 1441a(b)(4) (Supp.1990), specifically extends the benefits of Section 1823(e) to the RTC when the RTC is acting as conservator or as receiver. *See Castleglen, Inc.*, 728 F.Supp. at 671–72. Prior to the 1989 amendment to Section 1823(e), the statutory language extended only to the FDIC in its corporate capacity and not when acting as a receiver. *See Beighley v. FDIC*, 868 F.2d 776, 783 (5th Cir.1989). Section 1823(e), as amended by the FIRREA, now provides statutory protections to the FDIC—or the RTC—when acting "as receiver of any insured depository institution." Thus, the RTC as receiver for New Unifirst is entitled to the protection afforded under Section 1823(e) and under the holding in *Langley.*

■ Plaintiffs assert that the alleged actual knowledge of the RTC of the misrepresentations made by agents of Unifirst prior to placement of Unifirst into receivership estops the RTC from asserting *D'Oench, Duhme* and Section 1823(e). The knowledge of the misrepresentation by the FDIC, or the RTC, prior to its acquisition of failed bank assets is of no relevance to applicability of *D'Oench, Duhme* or Section 1823(e). *See Langley*, 484 U.S. at 94–95, 108 S.Ct. at 402; *Royal Bank of Canada v. FDIC*, 733 F.Supp. 1091, 1097 (N.D.Tex.1990).

The Fifth Circuit has clearly stated that *D'Oench, Duhme* bars the assertion of *affirmative claims* of oral misrepresentations against the receiver of a failed financial institution. *Beighley*, 868 F.2d at 782. Furthermore, the doctrine applies even when the borrower does not intend to deceive the RTC. *Id.* at 784. In *Beighley* the Fifth Circuit affirmed the summary judgment of the district court in favor of the FDIC–Receiver under the common law *D'Oench, Duhme* doctrine, holding that "Beighley cannot assert against the FDIC–Receiver any claims arising from [Moncor Bank's] alleged breach of an unwritten agreement...." *Id.* The Fifth Circuit further held that Section 1823(e) did not defeat Beighley's affirmative claims for relief because the statute *at that time* applied to the FDIC "Corporation" and was thus "not available as a bar to claims or defenses against the FDIC acting in its capacity as receiver." *Id.* at 783. The Fifth Circuit has recently reiterated that

*D'Oench, Duhme* "bars the use of unrecorded agreements between the borrower and the bank as the basis for defenses or *claims* against the FDIC." *Bowen,* 915 F.2d at 1016 (emphasis added).

■ Plaintiffs assert that the RTC has failed to present evidence that the alleged agreement between the Shulers and Unifirst, even if it exists, would diminish or defeat the interest of the corporation and any asset acquired by it. This argument fails in light of the holding in *Beighley:* "The test for the application of the *D'Oench, Duhme* doctrine is whether the borrower 'lent himself to a scheme or arrangement' whereby banking authorities are likely to be misled.... We have found that 'if [an] obligor may assert oral side agreements reducing the value of assets formerly held by the bank, then the FDIC would be misled.'" *Beighley,* 868 F.2d at 784. Plaintiffs' assertion of alleged oral representations and agreements directly reduces the value of assets formerly held by Unifirst, thereby misleading the RTC. The Complaint seeks rescission of the sale, and Plaintiffs demand return of money paid to Unifirst toward satisfaction of their promissory note given in payment for the property. Cancellation of the promissory note and accompanying deed of trust.are obviously at the heart of Plaintiffs' action. These documents constitute assets held by the RTC as receiver. If Plaintiffs were to prevail, the interest of the RTC in such assets would be "diminished or defeated."

Furthermore, Plaintiffs' contention that the *D'Oench, Duhme* doctrine bars only unrecorded agreements that diminish the interest of the RTC in a *specific asset* acquired from the failed bank is wrong as a matter of law. *Beighley* establishes that affirmative claims against a receiver may be barred by *D'Oench, Duhme* even though such claims may not defeat the receiver's interest in an asset per se. *Beighley,* 868 F.2d at 784 (alleged oral agreement to finance future loans). The Fifth Circuit rule announced in *Beighley* was clarified in *Bell & Murphy and Associates, Inc.* Plaintiff Bell & Murphy advanced essentially the same assertion as Plaintiffs pursue here. Bell & Murphy argued *D'Oench, Duhme* barred "only claims or defenses based upon unrecorded side agreements that defeat the FDIC's interest in a *specific asset* acquired from a bank." 894 F.2d at 753 (emphasis by the court). They sought to avoid *D'Oench, Duhme* by maintaining that while the asserted "agreement" would affect the net worth of the failed bank it would not diminish the value of specific debtor indebtedness to the bank. The Fifth Circuit rejected such an assertion, stating that "[w]e find this inventive argument to be meritless in light of our recent holding in *Beighley* that the *D'Oench, Duhme* rule bars affirmative claims based upon unrecorded agreements to extend future loans." *Id. See also Bowen,* 915 F.2d at 1016 ("[t]he agreement need not implicate a specific obligation, such as a note or other asset held by the FDIC").

Accordingly, the Shulers' suit must fail, as their claims are predicated on an alleged breach of an unwritten agreement that Plaintiffs are attempting to assert against the RTC in its capacities as receiver. Plaintiffs' affirmative claims are barred under both the *D'Oench, Duhme* doctrine and 12 U.S.C. § 1823(e). The Court is of the opinion that there are no genuine issues of material fact and that the Motion of Defendants for Summary Judgment is well taken and that Defendants are entitled to summary judgment as a matter of law.

IT IS, THEREFORE, ORDERED that the Motion of Defendants Resolution Trust Corporation, as Receiver for Unifirst Bank for Savings, F.A., Jackson, Mississippi, and Resolution Trust Corporation, as Receiver for Unifirst Bank for Savings, a Federal Savings and Loan Association, Jackson, Mississippi, for Summary Judgment is hereby granted in their favor and that this cause is hereby dismissed. A separate judgment will be entered in this cause.

SO ORDERED.